## CLARENCE BAKER

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa September 27, 1882—Rehearing denied March Term 1883.*

1. EXCEPTION—*not necessary on overruling motion to quash indictment.* An exception to the ruling of the court on a motion to quash an indictment is not necessary to be taken and preserved by bill of exceptions, in order to present the question of the sufficiency of the indictment to this court, any more than there is for an exception to the decision of the court upon a demurrer to a pleading.

2. SAME—*when necessary.* The rule requiring the record to show an exception to the ruling of the court, applies only where such ruling is based upon extrinsic matter which does not, without being embodied in a bill of exceptions, constitute a part of the record.

3. INDICTMENT—*attempt to produce abortion.* An indictment charged that the defendant did, on, etc., at, etc., "unlawfully, feloniously and willfully use and employ a certain instrument, the name of which is to the grand jury unknown, in and upon one C D, then and there being pregnant with child, by then and there forcing, thrusting and inserting said instrument into the private parts of the said C D, and then and there did thereby unlawfully, feloniously and willfully attempt to procure and produce the miscarriage of the said C D:" *Held,* that the indictment was substantially good. It would have been more technically accurate to have given some general description of the instrument used, as, "a certain metallic instrument, whose name is unknown," etc., and the statement of the offence would have been somewhat more specific by adding the words, "*and womb,*" after the words, "private parts."

4. CRIMINAL LAW—*two can not be jointly convicted of distinct offences.* Under an indictment against two or more, two can not be convicted jointly for distinct offences, though of the kind charged in the indictment, when committed by them severally, and growing out of separate transactions.

5. SAME—*evidence against one of two persons charged.* As all crimes committed by two or more persons are several as well as joint, it follows that it is not necessary to prove all guilty in order to convict one under an indictment charging both with the commission of the offence. Hence, on a charge against two of an attempt to produce an abortion, proof of an act by one defendant done to effect such purpose is properly admissible against him before the People's evidence is closed.

6. SAME—*neglect of defendant to testify—calling attention of jury to that fact, improper.* On the trial of an indictment against two, one of the

defendants testified as a witness, and the other did not. The court, on the part of the People, in substance instructed the jury, that in this State every defendant is permitted to testify in his own behalf if *he* desires, and that the defendant who testified was a competent witness, but the jury were not bound to believe her evidence, and treat it the same as that of other witnesses, etc.: *Held*, that the first part of the instruction, while true as an abstract proposition of law, had but little, if any, appropriate connection with the succeeding part, and announced no principle calculated to aid the jury, and was well calculated to mislead. It was regarded as an adroit device to have the court, under the guise of giving the law to the jury, call their attention to the fact that one of the defendants had declined to testify, and in this respect was erroneous.

7. SAME—*when prosecution must elect on what evidence to rely.* On the trial of a man and a woman for an attempt to produce an abortion, the prosecutrix testified to an attempt made upon her at her father's house by the man alone, with which, it appeared at the close of the testimony, the other defendant had no connection, and there was evidence against both as to similar attempts at the house of such other defendant: *Held*, that when this appeared at the close of the testimony, the People should have been put to their election whether to proceed against the man alone for his separate act, or against them both for what occurred at the house of the other defendant, and if the prosecution elected to proceed for the latter offence, all evidence of the former should have been excluded.

8. SAME—*evidence of similar offences.* Upon the trial of a party for one offence growing out of a specific transaction, evidence to prove a similar substantive offence founded upon another and separate transaction is not admissible, but in such case the prosecution will be put to its election. An exception to this rule is found in prosecutions for passing counterfeit money, and the like, for the purpose of showing guilty knowledge.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. J. V. EUSTACE, Judge, presiding.

Messrs. C. J. & C. C. JOHNSON, for the plaintiff in error.

Mr. JAMES McCARTNEY, Attorney General, Mr. WALTER STAGER, State's Attorney, and Mr. WILLIAM BARGE, for the People.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

At the March term, 1882, of the Whiteside circuit court, Clarence Baker and Eliza Graves were indicted by the grand

jury, tried, and convicted of the crime of attempting to pro-
cure and produce the miscarriage of Martha Van Antwerp,
an unmarried woman, then pregnant with child, of the age
of about nineteen years. Motions for a new trial and in
arrest of judgment having been severally overruled, they
were duly sentenced by the court, in pursuance of the verdict
of the jury, to the penitentiary for a period of two years.
Baker alone brings the case here on error, and assigns vari-
ous reasons for a reversal of the judgment.

The indictment charges that the said Clarence Baker and
Eliza Graves did, on the 17th day of December, 1881, at
and within the county of Whiteside, "unlawfully, feloniously
and willfully use and employ a certain instrument, the name
of which is to the jury unknown, in and upon one Martha
Van Antwerp, and then and there being pregnant with child,
by then and there forcing, thrusting and inserting said instru-
ment into the private parts of the said Martha Van Antwerp,
and then and there did thereby unlawfully, feloniously and
willfully attempt to procure and produce the miscarriage of
said Martha Van Antwerp." A motion to quash the indict-
ment for insufficiency having been overruled by the court,
the question is directly presented whether the indictment is
legally sufficient to sustain the conviction.

It is objected by counsel for the People, that inasmuch as
the record fails to show the plaintiff in error excepted to the
ruling of the court in disposing of the motion to quash, the
question of the sufficiency of the indictment does not arise
on the record, and hence whatever the fact may be with
respect to its alleged insufficiency, we are not permitted to
consider it. This is a misapprehension. The rule contended
for only applies where the ruling of the court is based upon
extrinsic matter, which does not, without being embodied in
a bill of exceptions, constitute a part of the record. There
is no more necessity for excepting to the ruling of the court
upon a motion to quash an indictment, than there would be

for excepting to the ruling of the court upon a demurrer to a plea or declaration, and it will not be pretended, we presume, there is any necessity, or even propriety, for an exception in that case. *Gallimore* v. *Dazey et al.* 12 Ill. 143 ; *Safford et al.* v. *Vail,* 22 id. 327.

The indictment is claimed to be defective in two respects : *First*—It is insisted that it does not, with sufficient certainty, describe the nature or character of the instrument with which the alleged attempt to commit the offence charged was made, and numerous authorities are cited in support of the position. We have examined all of them, except one or two which are not within our reach, and many others bearing on the question which are not cited, and from a very thorough consideration of the question we are satisfied the indictment in this respect is, on general principles, substantially good. Under the circumstances of this case, as the name of the instrument was unknown, while its form and character were known, it would have been more proper, according to the highest degree of technical accuracy, to have given some general description of it, such as "a certain metallic instrument, whose name is unknown," etc. But this would have added but little, if anything, to the averment by way of making it more definite or perspicuous, nor would the addition have materially aided the accused in obtaining an accurate understanding of the transaction for which he was indicted.

*Second*—It is urged the indictment "is uncertain as to the mode or manner in which the offence charged was attempted to have been committed." Like the other objection, we do not think there is any substantial ground for it. While the indictment would have been somewhat more specific by adding the words, "*and womb,*" after the words, "*private parts,*" yet the omission to add them does not, in our judgment, render the indictment fatally defective.

We think the indictment is substantially good, and that consequently there was no error in overruling the motion to quash. *Regina* v. *Ashmall,* 9 C. & P. 236, (Eng. Com. L. R. 97); *Commonwealth* v. *Snow,* 116 Mass. 47; *Commonwealth* v. *Jackson,* 15 Gray, 187.

The conviction in this case rests mainly upon the testimony of the prosecuting witness, Martha Van Antwerp. It is true she is strongly corroborated in some respects by circumstances testified to by other witnesses. From her testimony it appears that about the first of September, 1881, she had sexual intercourse with, and became pregnant by, the defendant Clarence Baker, under a promise that if he got her in trouble and did not get her out, he would marry her; that on discovering that she was with child he first bought her a bottle of medicine for the purpose of producing a miscarriage; that with a like purpose, about the middle of October following, at her father's house in Prophetstown, he inserted a wire into her body, which she produced in court, the same being, when used, some nine or ten inches long, with a hook on the end. All this evidence, which tends to establish an offence committed by him alone, was admitted by the court against the objections of the plaintiff in error, and an exception taken. There was clearly no error in receiving this testimony at the time it was offered, even had it been known the People would, as they subsequently did, fail to connect Eliza Graves with it, for as all crimes committed by two or more persons are several as well as joint, it follows it is not necessary to prove all guilty in order to convict one under such an indictment; but under an indictment against two or more, two can not be convicted jointly for distinct offences, though of the kind charged in the indictment, committed by them severally, and growing out of separate transactions.

The testimony of the prosecutrix further shows that after failing in producing a miscarriage by the means above stated, under the advice of plaintiff in error she was induced to go

with him to Morrison, where his co-defendant, Eliza Graves, resided, for the purpose of being operated on by her, with the view of accomplishing that object. On arriving there they put up at the Revere House, he registering under the name of C. P. Williams. About ten o'clock in the morning he conducted her to within a short distance of the house of Mrs. Graves, when he returned, and she went in alone. On going in and making her business known, Mrs. Graves, according to the statement of the witness, introduced into the vagina a speculum, about four inches long and one and a half inches in diameter, and through it passed a metal tube, about a foot long and as large as the end of the witness' little finger, into the womb or uterus, and by means of a rubber ball squeezed water into the tube, and thus conveyed it into the womb, after which she gave her a prescription for some medicine, and they parted. This course of treatment was repeated on two subsequent occasions, but to no effect. Mrs. Graves admits the prosecutrix called on her, and at her request she examined her, and injected some water into the vagina through the speculum, but denies that anything was done by her with the view of producing an abortion.

There was considerable evidence in the case besides this we have mentioned, but in the view we take of the matter we do not deem it important to discuss it.

Plaintiff in error did not go upon the witness stand, but his co-defendant, as we have just seen, did. Under these circumstances the court, at the instance of the People, gave the jury, among others, the following instruction:

"The jury are instructed that in this State every defendant, if he desires, is permitted to testify in his own behalf, and in this case the defendant Eliza Graves is a competent witness, but the jury are instructed that they are not bound to believe the evidence of Eliza Graves, and treat it the same as that of other witnesses, but may take into consideration the fact

that she is defendant, and give her testimony such weight only as, under all the circumstances proven in the case, they think it entitled to after a consideration of her testimony, and all other evidence and circumstances in the case."

This instruction is not fair to the accused, and was evidently calculated to mislead the jury. It tells the jury that in this State every defendant is permitted to testify in his own behalf if *he* desires. This part of the instruction, while true as an abstract proposition, yet it has little, if any, appropriate connection with the remaining portion of the instruction, and announces no principle calculated to aid the jury in the consideration of the case, and we can but regard it as an adroit device on the part of counsel to have the court, under the guise of giving the law to the jury, call their attention specifically to the fact that the plaintiff in error, although he had an opportunity of doing so, had declined to testify in his own behalf. To permit this to be done with impunity would defeat the expressed will of the legislature, and deprive the accused of a right which the State has studiously attempted to protect. The statute has, in unmistakable terms, declared, in effect, the omission of the accused to testify shall not be used to his prejudice or taken as an evidence of guilt, and in such case court and counsel should studiously avoid all allusions to the subject.

Other objections are made to this and other instructions, but as the one we have just discussed is regarded as well taken, it is not necessary to consider them.

It may be observed, in conclusion, that at the close of the testimony, when it affirmatively appeared that Eliza Graves was in no manner connected with the transaction at the residence of the prosecutrix, in which she claims a wire was used by defendant Baker alone, the People should have been put to their election whether they would proceed against Baker alone for using the wire, or against them both for

what occurred at the house of defendant Graves. Assuming the evidence of the prosecutrix to be true, it established two distinct offences: one committed by Baker alone, and the other by him and Mrs. Graves jointly; and if the prosecution elected to proceed for the latter offence, all evidence of the former should have been excluded from the jury, as it is well settled that upon the trial of a party for one offence growing out of a specific transaction, you can not prove a similar substantive offence founded upon another and separate transaction, but in such case the prosecution will be put to its election. An exception to this rule is found in prosecutions for passing counterfeit money, and the like, where previous attempts to pass counterfeit money may be proved for the purpose of showing guilty knowledge; but the principle involved in this class of cases has no application to the case in hand. These suggestions are made with a view of avoiding all misapprehension on this subject in the further prosecution of the case.

For the error indicated the judgment of the court below as to plaintiff in error will be reversed, and the cause remanded for further proceedings.

*Judgment reversed.*