EBBERT JANZEN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 20, 1896.*

EVIDENCE—*in prosecution for rape—controlling application of improper testimony.* The admission, on the trial of a father for rape upon his daughter, of evidence that he also committed a rape upon another daughter, is reversible error, although the court attempts to confine its application to the question why the latter daughter left home and to the contradiction of defendant's testimony.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. JAMES SHAW, Judge, presiding.

WILLIAM M. SNYDER, WILLIAM N. CRONKRITE, and HORATIO C. BURCHARD, for plaintiff in error.

MAURICE T. MOLONEY, Attorney General, (T. J. SCO-FIELD, M. L. NEWELL, SAMUEL RICHOLSON and GEORGE BACON, of counsel,) and OSCAR E. HEARD, State's Attorney, for the People.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was an indictment in the circuit court of Stephenson county, against Ebbert Janzen, plaintiff in error, for rape, alleged to have been committed on or about the first day of May, 1894, upon the person of his daughter, Mary Janzen, who at the time the offense was committed was under the age of fourteen years. On a trial before a jury the defendant was found guilty as charged in the indictment, and his term of imprisonment was fixed at six years in the penitentiary. The court overruled a motion for a new trial and entered judgment on the verdict, to reverse which the defendant sued out this writ of error.

It is first claimed by counsel for plaintiff in error that the court erred in the admission of improper evidence, and under this head it is said the prosecution was permitted to introduce evidence that another offense was committed by the defendant on the person of another daughter, subsequently to the one charged in the indictment. Upon looking into the record it appears that Yetta Janzen, a sister of the prosecuting witness, was called and testified in behalf of the People, and from her evidence it appeared that she had been absent from home about three years, living with a family named Clipping, who resided some five miles from the defendant. Upon cross-examination of the witness the following occurred: Counsel for defense stated that he desired to show that the witness had become displeased with her father because she did not have as good a home with him as she had at Clipping's.

The Court: "You may show that briefly, but not go into details.

Q. "You did not want to stay at home, did you, Yetta?

A. "No, sir.

Q. "Did your father want you to stay at home?

A. "Yes, sir."

After this evidence was called out by the defendant, the court, over the objection of the defendant, permitted the witness, on behalf of the People, to testify as follows: "He tried to use me in a bad way in bed. First he was in another bed and afterwards he came into my bed. The boys and Mary were out doors. This was about five o'clock in the morning. After he got into bed he took hold of my arms and got on top of me. He unbuttoned my drawers and put his private parts between my legs. I hollered, 'Ouch.' I hollered more than once—not very loud. When I got up and went out doors I found half a dozen men there." This evidence was admitted, as stated by the court, for the purpose of showing why the witness, Yetta, left home, and the jury were told by the court that the evidence was not admissible for the purpose of showing that defendant had committed a crime on Yetta, and they would not consider it for that purpose.

The defendant testified as a witness in his own behalf, and on cross-examination admitted that he was in bed with Yetta on the morning of May 15,—the day he was arrested,—but he testified that he did nothing to the girl, and in rebuttal the court, over the objection of the defendant, permitted three witnesses to testify that on the morning of May 15 they were in the defendant's home and saw him in bed with Yetta Janzen, in the act of having criminal sexual intercourse with her. This evidence was admitted by the court, as stated at the time, on the following ground: "I wish to state that this evidence is admitted because the defendant, in his examination, testified that he had gone into this room and got into the bed with this girl, but had done nothing else. If it was

material and competent for him to testify as to that matter I think it is proper that the prosecution should be permitted to contradict it, and for that purpose I admit it in evidence, and the jury will understand that they are not hearing it for the purpose of trying this defendant for any crime committed on Yetta, but simply for the purpose of contradicting his own testimony."

If the evidence of the girl, Yetta, and of the three other witnesses, in regard to what occurred on the morning of May 15, proves anything, it proves the defendant guilty of a rape on the person of Yetta Janzen,—an offense for which the defendant was not indicted and for which he was never put upon trial; and the question presented is, whether the admission of evidence which proves the defendant guilty of a crime not charged in the indictment is error for which the judgment should be reversed.

In Russell on Crimes (vol. 2, p. 772,) the author says: "No evidence can be admitted which does not tend to prove or disprove the issue joined. In criminal proceedings the necessity is stronger, if possible, than in civil, of strictly enforcing the rule that the evidence is to be confined to the point in issue.   *   *   *   It is therefore a general rule that the facts proved must be strictly relevant to the particular charge, and have no reference to any conduct of the prisoner unconnected with such charge."

It will be remembered that the crime charged against the defendant in the indictment was a rape on the person of Mary Janzen. Any evidence which tended to prove the defendant guilty of the crime alleged in the indictment was proper for the consideration of the jury, but evidence which tended to prove him guilty of another crime—another rape—on some person not named in the indictment, was not competent. When a defendant is put upon trial on an indictment he is presumed to be ready to meet the charge contained in the indictment, but he is not presumed to be ready to defend against a charge not made against him therein, nor does the law require him

to meet such a charge. In Wharton on American Criminal Law (sec. 635) the author, among other things, says: "It is under no circumstances admissible for the prosecutor to put in evidence the defendant's general bad character or his tendency to commit the particular offense charged; nor is it admissible to prove independent crimes, even though of the same general character, except when falling strictly within the exceptions above stated." The exceptions alluded to by the author would not embrace the evidence under consideration. In *Parkinson* v. *People*, 135 Ill. 401, a similar question arose, and it was held that evidence tending to prove a similar but distinct offense from that for which one is being tried is not admissible for the purpose of raising an inference or presumption that the prisoner committed the particular act for which he is on trial. See, also, *Baker* v. *People*, 105 Ill. 452.

In criminal cases, when it becomes necessary to prove a guilty knowledge on the part of a defendant, evidence of other offenses committed by him, though not charged in the indictment, may be admissible for that purpose. Thus, upon an indictment for uttering a forged bank note knowing it to be forged, evidence may be given of other forged notes having been uttered by the prisoner in order to show his knowledge of the forgery. (2 Russell on Crimes, 777.) The case under consideration, however, is not a case of that character, and the rule there announced has no application to this case. It is true that the court undertook to confine the application of the testimony of Yetta Janzen to the question why she had left home, and to confine the application of the evidence of the three witnesses to a mere contradiction of the defendant's testimony that he had done nothing when in bed with Yetta. There are cases where evidence not admissible generally may be admitted for a single purpose, and may be confined to that purpose by the instruction of the court. But this is not a case of that character. Here the defendant was indicted for a rape on his own daughter,—a girl

twelve years old. On the trial of the defendant for this charge would it be possible to prove that he had been guilty of a like crime on another daughter who was only a year or two older, and confine the effect of such evidence on the minds of the jury to some trivial or insignificant matter that arose on the trial? The answer to this question is obvious. It is true that the commission of one offense is not evidence of the commission of another and an independent offense, yet the proof of the one cannot be said to be without influence on the mind of the juror, convincing him that the defendant may be guilty of the other. In *Shaffner* v. *Commonwealth*, 72 Pa. 60, in speaking on this subject, the court said: "Logically, the commission of an independent offense is not proof, of itself, of the commission of another crime. Yet it cannot be said to be without influence on the mind, for, certainly, if one be shown to be guilty of another crime equally heinous it will prompt a more ready belief that he might have committed the one with which he is charged. It therefore predisposes the mind of the juror to believe the prisoner guilty.  *  *  *  It is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but is detrimental to justice to burden a trial with multiplied issues that serve to confuse and mislead a jury."

Whether the defendant was guilty of the charge contained in the indictment was a question for the jury, and it was the right of the defendant to have that question fairly submitted to them. That has not been done. The evidence of an independent offense was calculated to prejudice the jury, and we think it was error to admit that evidence.

The judgment will be reversed and the cause remanded.        *Reversed and remanded.*