194   365
e210  ¹203
f210  ²205

### S. DIXON BISHOP et al.

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1902.*

1. CRIMINAL LAW—*evidence tending to prove another offense not ordinarily admissible.*    In a criminal case evidence tending to prove a similar but distinct offense from that for which the accused is being tried is not admissible for the purpose of raising an inference that he committed the crime of which he is accused.

2. SAME—*State has burden of proving identity of property charged to have been stolen.*  On the trial of one charged with having stolen copper wire, which he had sold to a junk dealer, from an electric light house, the State must prove, beyond a reasonable doubt, the identity of the wire as coming from the electric light house.

3. SAME—*right of accused to instruction concerning petty larceny.*  One indicted for grand larceny and charged with having stolen and sold some copper wire is entitled to an instruction that the People must prove that the wire, in the condition it then was, was worth more than $15 in cash, and that if they fail to make such proof and the jury believe, from the evidence, that the wire was stolen more than eighteen months before the indictment was found, the accused should be acquitted.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

TIPTON & TIPTON, and S. H. HAYES, for plaintiff in error.

H. J. HAMLIN, Attorney General, (R. L. FLEMING, State's Attorney, and E. M. HOBLIT, of counsel,) for the People.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the McLean circuit court seeking to reverse a judgment rendered there convicting the plaintiffs in error of the crime of grand larceny. They were found guilty upon an indictment charging them, jointly with one Frank Lott, of stealing two hundred pounds of copper wire, of the value of fifteen cents per pound, belonging to Henry Keiser. Frank Lott was granted a separate trial.

It appears from the evidence that prior to January, 1900, several rolls of old copper wire had been taken from poles by Henry Keiser, owner of the electric light plant at Heyworth, in McLean county, and placed in a coal-shed connected with the plant. W. R. Johnson, the superintendent, testified that some of the rolls were taken away during the month of January and February, but he does not undertake to state how many were taken. Indeed, he does not state how many rolls were placed in the coal-house, but says, "I presume five or six." About the last of January, 1900, the defendants took to the place of Frank Lott, a junk dealer in Heyworth, a quantity of wire loaded on a wheelbarrow and received from him for it a check for $13.30. The theory of the prosecution is that this was a part of the wire belonging to Keiser. The defendants did not deny the delivery of the wire to Lott, but claimed that it was done for and at the request of Lott. They both testified, in substance, that he told them he had some stuff on a wheelbarrow back of a certain store and wanted them to convey it to his place; that they went to the place indicated and found a wheelbarrow with something on it, covered with a piece of carpet or sack, and that as they proceeded to Lott's place the covering slipped off and they discovered it to be wire, but they gave no description of it and were not asked to do so. They further testify that when they delivered it to Lott he gave them a check, as they sup-

posed, to pay for conveying it there, but which proved to be for $13.30; that one of them the next day cashed the check and they divided the money, but discovering that they were accused of the larceny they offered to return the money to Lott, and he refusing to receive it, they sent it to Keiser. They both denied all knowledge of the larceny.

While it is impossible to reconcile the defendants' conduct with their innocence, the proof upon which the prosecution relied to make out the case is very unsatisfactory, in that it fails to identify the wire delivered by them to Lott as that taken from the plant of Henry Keiser, with the degree of certainty required in criminal cases. There is an entire absence of testimony as to the description of the wire delivered to Lott. Whether it was in a roll, in long or short pieces; whether it was new, insulated, fit for use in an electric light plant, or merely scrap wire, in no way appears. There is evidence to the effect that the defendants admitted they took certain wire to Lott and sold it, but those admissions were accompanied with the declaration that they did not take it from the plant but found it upon the wheelbarrow, as they testified, and there is no direct evidence that they did take it from the plant. The step-son of Lott testified, when they brought it to the house it was in a sack, and his step-father told them junk wire was worth six cents a pound.

But conceding that the evidence of the theft, as alleged in the indictment, was sufficient to justify the conviction, there was manifest error in the ruling of the trial court on the admission of testimony. One Frank Miller was sworn on behalf of the prosecution, and over the objection of the defendants allowed to testify to a conversation with the defendants in regard to a roll of wire which it is not claimed had anything to do with the alleged crime. He testified: "I had a conversation with Young, along in January or February, regarding the sale

of some wire." The conversation was objected to by counsel for the defendants unless confined to the roll of wire in question, but the court overruled the objection, and the defendants, by their counsel, duly excepted. Thereupon the witness proceeded: "He asked me if I would help him steal a roll of wire out of the electric light plant at Heyworth—copper wire. This was in the afternoon. We were sawing ice together. He told me how much easier and faster a way of making money it was than sawing ice. That evening, after supper, he came to me and asked me again to help him steal the wire. I told him I wouldn't do it. He said, 'I will ask you to help wheel it down to Frank Lott's; we have it on the wheelbarrow, but Bishop is not stout enough to wheel it down there.'" The defendants objected and asked to have the answer excluded, but the request was again denied, and the witness further stated: "He said, 'All I ask you is to help us wheel it down to Lott's; Bishop isn't stout enough; if you help, don't say anything to Lott, because if he finds out we stole this wire he will not buy it.' He said, 'I and Bishop sold him a bunch of wire a month or so before that.' He said, 'If Lott will buy it and we get the money, I will divide the money between you and Bishop and myself.' He said, 'We don't care who Lott states he got the wire from; we can out-swear him, and if he will not buy it, there is a man in Bloomington will.' Right after a while I had a talk with Bishop—about two or three weeks, maybe. He saw Young and I talking one day, and he asked me if Young was asking me to help him steal something. I said, 'Yes.' He said, 'That is what I told him.' I said, 'Did you help Young with one bunch of wire?' and he said, yes; that they took one bunch to Lott's and sold it to him, but Young got him into that, and he will never help him do anything else. Bishop told me he didn't know anything about this big roll of wire. I did not tell him where this big roll of wire was at the time. He said

he sold the first bunch to Lott, and he gave them a check for thirteen dollars and something. The wire weighed about one hundred and eighty-five pounds." The conversation was denied by both the defendants.

This testimony, under a well recognized rule of evidence, was wholly incompetent, and the only effect of it must have been to prejudice the jury against the defendants in the case upon trial by showing they were willing to commit another and different crime. (Wharton on Crim. Law, sec. 635; *Baker* v. *People*, 105 Ill. 452; *Farris* v. *People*, 129 id. 521; *Parkinson* v. *People*, 135 id. 401; *Janzen* v. *People*, 159 id. 440.) In the latter case, after quoting from Wharton where he says, "it is under no circumstances admissible for the prosecutor to put in evidence the defendant's general bad character or his tendency to commit the particular offense charged, nor is it admissible to prove independent crimes, even though of the same general character, except when falling strictly within the exceptions above stated," we said: "The exceptions alluded to by the author would not embrace the evidence under consideration. In *Parkinson* v. *People*, 135 Ill. 401, a similar question arose, and it was held that evidence tending to prove a similar but distinct offense from that for which one is being tried is not admissible for the purpose of raising an inference or presumption that the prisoner committed the particular act for which he is on trial." (See, also, *Turley* v. *People*, 188 Ill. 628.) It is not claimed, and could not be, that the foregoing evidence falls within any exception to the general rule as above stated.

We also think the court erred in the refusal of instructions asked on behalf of the defendants. Their counsel submitted to the court an instruction as follows:

"The court instructs the jury that one of the material questions in this case is whether or not the wire in question is the identical wire taken from the electric light house, and the burden of proof is on the prosecution to

194—24

prove, beyond a reasonable doubt, the identity of the wire as coming from the electric light house."

This instruction was refused. We are unable to discover any objection to that instruction, and it was clearly applicable to the case. The only justification for its refusal would be that it was covered by others given, and this we do not find to be true. As is too often the case, this record is burdened with instructions asked by both sides, and entirely too many were given. About twenty of those asked by the defendants were refused,—most of them properly; but we think in refusing this one there was manifest error.

After the trial and conviction of plaintiffs in error Frank Lott was tried for the same crime and acquitted, it being shown upon his trial that the wire delivered to him by the defendants, Bishop and Young, was of much less value than $15, making the crime, at most, but petit larceny, which was barred by limitation. Thereupon the defendants set up in their motion for new trial that testimony as newly discovered evidence, and sought to show that they had used proper diligence to obtain the same prior to the trial. While we think they did not bring themselves within the rule requiring diligence on their part and that of their attorneys to discover and produce the newly discovered testimony on the trial, the evidence set up in the motion very clearly, if not conclusively, shows that the crime, if committed, was petit and not grand larceny; and if the former, it is conceded that no conviction could be had, more than one year and six months having elapsed between the commission of the alleged larceny and the finding of the indictment.

As we understand the evidence, it wholly failed to prove that the value of the property exceeded $15, but the court gave, at the instance of the plaintiff, an instruction which directed the jury "that if you believe, from the evidence, beyond a reasonable doubt, that the defendants are guilty of larceny in manner and form

as charged in the indictment, and that the value of the property stolen was more than $15, then, if you further believe, from the evidence, beyond a reasonable doubt, that such crime was committed by the defendants within three years last past, you should find them guilty, although the date when such larceny was committed was different from the date alleged in the indictment." Waiving the question as to whether there was any evidence upon which to base this instruction, the defendants certainly had a right to have the jury instructed as to their duty in case they found the value of the property to be $15 or less, and they asked the court to give instruction No. 20, as follows:

"The court instructs the jury that although they may believe, from the evidence, that the wire in question was stolen by some party or parties, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the wire, in the condition it then was, was worth more than $15 in cash; and if they fail to make such proof, and the jury further believes, from the evidence, that said wire was stolen more than eighteen months prior to the finding and presentation of the indictment in this court, then the jury will acquit the defendants."

While it may be conceded that this instruction is not skillfully drawn, yet we think it should have been given, —and especially so in view of the fact that the court had given the instruction above set out on behalf of the People.

The record in this case is very much confused, but we are convinced that the trial court was in error in the admission of testimony, as above stated, and in the refusal of the foregoing instructions, and for those reasons, without reference to the many other errors insisted upon, its judgment must be reversed and the cause remanded.

*Reversed and remanded.*