### STATE v. JOHN FITCHETTE.[1]

December 19, 1902.

Nos. 13,305—(22).

**Evidence of Other Crimes.**

> On the trial of a person charged with a criminal offense, it is as a general rule improper to show that he has committed other crimes independent of, and having no connection with, the one under investigation.

**Rule Applied.**

> This general rule applied to the record returned in this case, and *held* that, after the introduction of evidence tending to establish every element of the offense of receiving a reward for procuring an appointment to a public office of another person, under G. S. 1894, § 6334, it was improper and prejudicial to show that the accused defendant had committed a previous offense of a similar character.

[1] Reported in 92 N. W. 527.

88 M.—10

Defendant was convicted in the district court for Hennepin county, Simpson, J., of the offense of receiving a reward for procuring for another person an appointment to a public office, and sentenced to confinement for ninety days in the Minneapolis city workhouse. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Lane & Nantz*, for appellant.

*W. B. Douglas*, Attorney General, *Fred H. Boardman*, County Attorney, and *C. S. Jelley*, Assistant County Attorney, for the State.

LOVELY, J.

Defendant was convicted of the offense of taking a reward to procure an appointment for another to a public office, under G. S. 1894, § 6334, which, so far as here material, reads as follows:

"A person who asks or receives or agrees to receive any gratuity or reward or any promise thereof for * * * procuring for another person an appointment to a public office * * * is guilty of a misdemeanor."

There was evidence for the prosecution tending to support the following facts: Defendant was a captain on the police force in Minneapolis during the year 1901. John Long had been a policeman under the previous city administration, but had been relieved. He desired a reappointment, and his application therefor had been filed with the mayor. On August 18, following, defendant had a conversation concerning this application with an attorney named Johnson, in which the former said substantially that "they were raising a large campaign fund," and, if Long could put up $200, he could have the appointment. Johnson repeated this to Long. A talk followed, and Long gave Johnson $200, to be delivered to defendant to secure for him the desired place. Johnson took the money, and gave it to defendant at a restaurant conducted in the city by the latter, who said, on receiving it, that Long would be appointed. Defendant and Johnson then passed from the restaurant to the sidewalk, where defendant was introduced to Long, and took his name upon a memorandum, saying at the same time, "I am going to the mayor's office." Later on during the same day, while the mayor, his secretary, and defendant were at a table in

the restaurant, Long came in. He was introduced to the mayor, who handed him the appointment he had been seeking.

The effect of this evidence, if credited, was sufficient to establish every substantive element of the crime for which defendant was prosecuted; but after evidence to support the criminative material facts, which were denied on the part of the defense, further testimony was received against defendant's objection tending to show that six months before the Long incident defendant bargained for an appointment to a position on the police force with another applicant, and accepted $100 to procure it for him. The effect of this evidence was unquestionably injurious to defendant, for it is within the natural inclination of the mind to suspect one under accusation who has been previously charged with an offense similar to that for which he is prosecuted, and in recognizing this tendency to suspicious inferences based on such sources it has always been regarded as one of the most salutary safeguards of our system of jurisprudence that the accused shall enter upon and continue through his trial protected by a presumption of innocence, which cannot be attacked by assaults upon his general character, unless he himself puts it in issue by affirmative proof that it is good. He is also entitled to be informed of the precise charge he is to meet, that he may prepare for his trial. These rights are secured by constitutional sanctions, and should be efficiently guarded by the courts. Hence the proof of independent offenses of the same nature and character as the one for which the accused is tried cannot be given in evidence as a makeweight against him.

In the conduct of a trial in a court of law against a person charged with crime the suspicions of the detective or interested prosecutor, derived from a minute examination of the previous career of the accused, are not to be regarded as the legitimate subject of inquiry by the tribunal which is to determine the issue of his guilt or innocence. These principles are elementary. They are recognized and declared with unvarying unanimity by every reputable text-writer who has referred to the subject. In a late work on evidence it is stated as "a familiar rule that it is improper on the trial of a defendant for a crime to prove that he has committed other crimes having no connection with the one under

investigation. Such other acts of criminality or immorality are not legally relevant, and should not be dragged in to prejudice the defendant, or to create the probability of guilt." Jones, Ev. § 143. Again, it is asserted that "The reasons for this rule are obvious. To admit evidence of such collateral facts would be to oppress the party implicated by trying him on a case for preparing which he has had no notice, and sometimes by prejudicing the jury against him by publishing offenses of which, even if guilty, he may have long since repented, or which may have long since been condoned. Trials would, by this process, be injuriously prolonged, the real issue obscured, verdicts taken on side issues." Wharton, Cr. Ev. (9th Ed.) § 29. Again, it is declared that, to guard against these evils, and at the same time to avoid the delay which would be incident to an indefinite multiplication of issues, the general rule forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of the offense for which he is on trial. Underhill, Cr. Ev. § 87.

In the practical evolution of the law which protects an accused person from collateral attacks upon his character, and forbids proof of distinct offenses the only effect of which must be to prejudice his rights, several well-defined exceptions to the general rule as stated above have been recognized in the decided cases,— as where facts tend to show the motive for the offense as hostility, jealousy, or erotic passion in a previous criminal act; or when the claim is made by the defense that the investigated act was the result of a mistake; or where the identity of the accused or of the instrumentality to perpetrate the crime is so connected or involved in some other act of guilt that one relates to the other; or, again, where the previous offense is a part of a scheme or conspiracy incidental to or embraced in proof of the charge on trial. The authorities which sustain these exceptions recognize the general rule as laid down above, and illustrate the extreme solicitude of the law to afford protection in all cases where it should be given, and they go so far as to hold, as an admonition of duty upon the courts, that, where the exception to the general rule thus stated is doubtful in any particular instance, and the trial judge

does not clearly perceive that the evidence falls within its purview, the accused is to be given the benefit of the doubt, and the evidence rejected. Farris v. People, 129 Ill. 521, 21 N. E. 821; Parkinson v. People, 135 Ill. 401, 25 N. E. 764; Strong v. State, 86 Ind. 208; Com. v. Jackson, 132 Mass. 16; People v. Molineux, 168 N. Y. 264, 61 N. E. 286; Bishop v. People, 194 Ill. 365, 62 N. E. 785; People v. Williams, 127 Cal. 212, 59 Pac. 581; People v. Bennett, 122 Mich. 281, 81 N. W. 117.

In the application of these exceptions to the evidence tending to show violations of law other than alleged in this indictment, it seems very clear that no question of motive or intent was necessarily involved, nor could there be any necessity for identification of any person involved. The misdemeanor for which defendant was prosecuted is explicitly defined in the statute. It was for an act of office brokerage, depending upon testimony showing the demand of the gratuity and its acceptance as an inducement to secure the appointment. It was as clearly defined without the proof of the alleged reception of money six months before as with it. The statute under which the conviction was sought was to prevent such corrupt influences to debauch the civil service of the state whether the acceptance of the gratuity was made under the subterfuge of raising a campaign fund or upon the consideration of purely private gain. In either case a reward to aid the office seeker was prohibited, and upon the proof that the money was received the transaction falls within the mischief of the statute, and permits no obscurity or doubt as to any ingredient of the crime to which the exceptions noted above apply; hence the principles of the rule itself, rather than of the exceptions, would seem to require its application in the case at bar, for it is not the rights of those alone who may be guilty of other offenses for whom the solicitude of the law is to be exercised, but it is more particularly for the innocent, oppressed with unfounded suspicions, who may find no other shield for his protection than an intelligent enforcement of his constitutional safeguards by the courts. But it is urged that in this case a peculiar situation is involved; that defendant, being a police captain, would have facilities for and advantages in making recommendations for appointments on the

police force; and, if he was engaged in the business of office broker-
age, which the objectionable evidence, it is claimed, tends to estab-
lish, that instances of official misconduct indicate a system of
official corruption.  But this assumes what would be a matter of
proof under another charge, and begs the question at issue. If it
were sought to prove a conspiracy against the mayor and defend-
ant to traffic in appointments for pecuniary compensation under
a charge of criminal conspiracy, material evidence showing that
such scheme existed or was consummated might be admissible;
but the charge under investigation is for a different statutory
crime, distinctly set forth, which, upon any just or appropriate
induction, excludes any other independent offense.  It is said that
this charge is very similar to others which might be a part of an
iniquitous scheme.  This might be, for there is but little originality
in the commission of crime.  One bribery, robbery, or larceny is
very much like any other.  But we are not able to change the
essential nature of evidence by an alteration of names or terms,
and it is appropriate in this connection to notice, in passing, that
in one of the most reliable elementary works upon the law of
evidence the principle here involved is recognized by a very terse
and sententious illustration, viz.: "The fact that [one] formerly
committed another crime of the same sort, and had a tendency to
commit such crimes, is deemed to be irrelevant."  Stephen, Dig.
Ev. c. 3, note "a."  We should not break down these time-honored
barriers that protect the innocent until the guaranties of the
constitution are changed to adopt the methods of criminal pro-
cedure transferred from the civil law into some parts of Europe,
and too many recent evidences of the injustice of such a course on
the continent exist to justify any radical departure in this respect
from the justly prized rights of citizenship which our ancestors
have secured to us.

It is urged that testimony of a similar character was received
in the case of State v. Wilson, 72 Minn. 522, 75 N. W. 715.  A care-
ful analysis of the facts in that case will show that, while some
general statements were made in the opinion relative to the proof
of a system or scheme, the evidence there received is brought
within the exceptions above noted.  It is there said, that, where

the defendant is engaged in the system of successive frauds or swindles of the same kind in which he had been engaged, it is admissible. But this general statement was not the ground of the decision in that case, for, as further stated, the bill of exceptions did not purport to contain all the evidence; hence, for anything that appears, the conversations included in the alleged objectionable evidence might have occurred on the same day, and immediately preceding the commission of the offense charged, so as to be really a part of the same transaction. And, further: Whatever may be said as to the identity of one [defendant], there was no question about that of two others, hence that the testimony (to convict all) was admissible. But if there is any dictum in this opinion which tends to overrule the general rule that excludes evidence of similar offenses to overcome the well-grounded prohibitions referred to, we cannot follow it. In the later case of State v. Durnam, 73 Minn. 150, 75 N. W. 1127, which was a prosecution for soliciting a bribe of one partner, a conversation with the other partner, after evidence tending to show a conspiracy between both, was admitted. This testimony falls under one of the well-defined exceptions above noted.

Upon these considerations it seems clear that the defendant was deprived of his rights to a fair trial by the introduction of immaterial and prejudicial testimony, and the order appealed from is reversed.