JOHN ZINGG, Appellee, v. E. F. MITTERER, Appellant.

**HUSBAND AND WIFE: Damages—Excessive Damages.** Damages to
1  a husband for the loss of the consortium of his wife beyond a nominal sum is excessive when the wife is shown to be a common prostitute, to the full knowledge and *unconcern* of the husband.

**HUSBAND AND WIFE: Criminal Conversation—Evidence—Other
2  Offenses.** In an action by a husband based on criminal conversation with the wife, evidence that the defendant on one occasion assaulted the daughter of the plaintiff, with intent to have sexual intercourse with the daughter, is irrelevant and wholly unallowable.

Headnote 1:  30 C. J. p. 1166.  Headnote 2:  30 C. J. p. 1159.

*Appeal from Winnebago District Court.*—C. H. KELLEY, Judge.

JUNE 25, 1925.

ACTION for damages, bottomed on criminal conversation, aggravated by alienation of affection. From a judgment in favor of the plaintiff for $3,500, the defendant appeals.—*Reversed.*

*Thompson, Loth & Lowe* and *Senneff, Bliss, Witwer & Senneff,* for appellant.

*Tom Boynton,* for appellee.

ALBERT, J.—Plaintiff and his wife resided on a farm about a mile west of Buffalo Center, in this state. By occupation, plaintiff is a common laborer. They had four children, the

1. HUSBAND AND WIFE: damages: excessive damages.

oldest being a girl about 13 years of age, who was plaintiff's principal witness in the case, a boy of 11, and two smaller children of tender years.

It is the claim of plaintiff, and the evidence tends to show, that the criminal intercourse between plaintiff's wife and defendant occurred at the above residence. The facts developed by the testimony are of such character that we do not care to desecrate our records by a full recitation thereof. Many of those of more salacious nature will be omitted.

It appears that the matters complained of herein occurred in December, 1923. The plaintiff says that he became suspicious that things were not as they should be at home, about the first of September, 1923. He says that, one evening in December, 1923, he had gone upstairs to bed, where he had been for about half an hour when he heard a car coming in. He went downstairs, and found the defendant and two other men, who were strangers to him, in his wife's bedroom, the wife being in partial dishabillé. He was "so mad" that he told them that they should "get to hell out of there," or he would "have them pinched." He then left, and went upstairs to bed.

The evidence further shows that these men, or part of them, had visited this house on several previous occasions; that they drank liquor with the wife, and on various occasions indulged in promiscuous intercourse with her. If the story which the daughter here tells, is worthy of belief, the place was nothing more than a brothel; and the evidence of the daughter is that the mother, on various occasions, solicited these unlawful indulgences. In the light of this testimony and much more of a similar character, we must say that the loss to the husband of the consortium of his wife, she being of the character depicted,

could be only nominal, at most. Furthermore, the testimony of a man who will act as the plaintiff herein acted, when he discovers three men in his wife's bedroom, when she is partially disrobed, and evidences no more feeling or interest than to leave them there and go back to bed, is not entitled to much consideration at the hands of this court.

The daughter, who was plaintiff's witness,—and in tendering her as a witness he vouches for her credibility,—testifies to many of the facts recited and many other facts of similar nature. She was permitted to testify that, on one occasion, when she was upstairs in bed,—the transactions complained of always occurring downstairs,—the defendant came up to her bedroom, said her mother had sent him up to see her, sat on the edge of the bed, grabbed her by the shoulder, and was going to throw her down for the purpose of having intercourse with her. This testimony was objected to, and the objection was overruled by the court. The admission of the testimony is now urged as error. We think, under the peculiar facts in this case, that there can be no doubt that it was erroneously admitted. We know of no testimony which would tend to so fire the passions and prejudices of the jury as testimony of this character. The line of demarcation in the admission of evidence of this character is quite definitely fixed. The transaction with this girl was wholly foreign to any matters under investigation. It would not prove or tend to prove any of the material issues involved in the case, and was highly prejudicial to the defendant. *State v. Lyon,* 176 Iowa 171; *State v. Roscum,* 119 Iowa 330; *State v. Walters,* 45 Iowa 389; *State v. Thompson,* 14 Wash. 285 (44 Pac. 533); *Janzen v. People,* 159 Ill. 440 (42 N. E. 862).

This evidence does not come within any of the exceptions to the rule that prohibits the introduction of evidence of similar offenses. The wife was not a witness in the case; and the plaintiff was permitted to testify that she admitted to him that she had had intercourse with the defendant, defendant not being present at the time of said admission. While the record of the objection here is in fact unsatisfactory, it might be said, in passing, that said testimony is not admissible, under the well

*2. HUSBAND AND WIFE: criminal conversation: evidence: other offenses.*

known rules. 30 Corpus Juris 1161. It is quite apparent to us that the aforesaid testimony of the daughter was such as to serve as venomous poison against the defendant in the minds of the jury. Viewing the character of this wife in the light of the testimony given herein, the apparent effect of the *liaisons* of the wife upon the mind of the plaintiff, and the size of the ver-dict herein, we are quite satisfied that such a verdict could only be reached through passion and prejudice of the jury; and that the same is excessive, anyone who reads the testimony can see.— *Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.