(No. 19006.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PHILLIP O'CONNELL, Plaintiff in Error.

*Opinion filed October 25, 1928.*

JAMES C. O'BRIEN, and JOHN OWEN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted with Phillip Vicaro and James Nolan for the larceny of the sum of $1280, the property of The Fair, a corporation in the city of Chicago. By the second count of the indictment they were charged with having received that amount of money knowing it to have been stolen. Plaintiff in error was granted a separate trial. Nolan pleaded guilty and testified as a witness for the State. Plaintiff in error was found guilty and sentenced to the penitentiary. He seeks a reversal of the judgment.

The record shows that the garage of The Fair is located at 2235 South State street, in the city of Chicago. The delivery trucks of that corporation are kept at this garage. From time to time during the day the drivers bring in the trucks and turn over to the man in charge of the garage the sums of money collected by them in the course of the deliveries made. Louis Johnson was in charge of the garage on October 21, 1926. The office consists of three rooms in the southwest corner of the garage. These rooms are located along the south wall of the garage and adjoin. The safe in which the receipts of the day are kept is in the middle room. In order to enter these rooms it is necessary to enter first the one next to State street through a door leading from the main part of the garage. That room is connected by a door with the room in which the safe is kept. There are three doors to this garage opening onto State street. The small (or south) door is located near the office. On the night of October 21, 1926, at about ten o'clock, Johnson left the office and went to the basement to fire the heating plant. He was gone about five minutes, and on his return found the door of the safe open about three inches and a small sheet-iron box, in which the day's receipts had been put, was gone. Before going to the basement he had noticed that the door of the safe had been closed and the handle turned but the bolt locking it had

not been thrown. State's witness Gordon Gerrie was in charge of the garage until about 5:30 P. M. on this day. He testified that he put into this metal box about $1280 in currency, and also checks, amounting in all to about $1400; that he put the box in the safe and closed the door of the safe but did not lock it. Three or four mechanics were in the garage working on cars during that evening.

James Nolan, who pleaded guilty to this indictment, testified that he had been a driver for The Fair for about a year and a helper in the delivery work for about three years previous thereto. He testified that he had known plaintiff in error for about three years, and that during the week immediately prior to October 21 he had talked with plaintiff in error and Vicaro concerning the money collected by the delivery men and turned in at the garage. He testified that they asked him to leave the door open so that they could get in and get the money; that he had various conversations with plaintiff in error and Vicaro that week concerning the money turned in and the method of obtaining it; that he told plaintiff in error he would leave the door open as requested, and that his share of the proceeds of the theft was to be $100 for each thousand dollars obtained. He also testified that plaintiff in error told him that he had investigated the premises and discovered some iron doors in the back of the building, which he requested the witness to leave open, but the witness told him he could not do so, as they were padlocked, but agreed he would leave the small south door open so that they could get in. He testified that they met on the evening of October 21, at about eight o'clock, and that he told plaintiff in error that the south door would be open that evening. On cross-examination he stated that he did not intend to leave the door open or to commit robbery, but it is apparent from the evidence in the record that the door was open on that evening.

When Johnson returned from the basement and discovered the theft of the box containing the money he called

the police department and policemen were assigned to investigate the matter. Nolan was arrested that night and the next day plaintiff in error and Vicaro were arrested. Nolan confessed to his part in the crime and told the officers that plaintiff in error and Vicaro were the parties who committed the theft. When plaintiff in error was arrested he gave his name as Murphy. On searching him the officer found $176 in currency in his side coat-pocket. When asked where he got this money he stated that he sold some homebrew for it.

State's witness John F. Thomas stated that he was employed in the garage of The Fair in the work of charging the batteries of the delivery cars, which were electric trucks; that on the night of October 21 he came on duty at ten o'clock; that in approaching the building he walked south on State street, and when he was within fifteen or twenty feet of the south door of the garage he saw a man in the doorway coming out of the garage onto State street. This man he identified as plaintiff in error. Witness described the clothing worn by the man he saw. This description agrees with the description of the clothing worn by plaintiff in error at the time of his arrest. Thomas states that he came within a few feet of the man as the latter came out of the doorway and ran south toward Twenty-third street; that the garage, which is located on the east side of the street, had a high-powered light inside the window, four or five feet south of the door through which the man came from the building; that when the man left he started angling across the street in a southwesterly direction and this light then shone on his face. He testified that his attention was called to him because of the manner in which he left the door and his running toward Twenty-third street. He stated that the man carried a package under his coat. His identification of plaintiff in error is positive.

The defense consisted of four alibi witnesses, all of whom testified that they were at the headquarters of the

Telegraphers' Union, 324 South Clark street, on the evening of October 21, and that plaintiff in error was there from five o'clock in the afternoon until eleven o'clock that night. Of these witnesses, H. B. Thornton testified that there was a dice game going on and that he saw plaintiff in error there. He stated on cross-examination that it was possible that plaintiff in error could have gone out of the building and come back; that witness was in the game part of the time and out of it part of the time; that there were from five to fifteen players in the game. The testimony of his brother, N. S. Thornton, was practically the same. George Ryan testified that there were from fourteen to sixteen players in the game; that he was not there all of the time; that when he was there he saw plaintiff in error there. Frank Engallinera testified that he worked at these headquarters as janitor; that plaintiff in error was there that evening and that he gave witness a dollar tip. Two of these witnesses testified that plaintiff in error won a substantial sum of money; that he at one time had in the neighborhood of $200.

The grounds relied on for reversal are, first, that the verdict is against the manifest weight of the evidence; second, that the court erred in permitting the State to introduce in evidence the money found on plaintiff in error at the time of his arrest; third, there was no evidence on behalf of the prosecution covering a description of the money alleged in the indictment to have been stolen or any proof that the description was unknown.

From the statement of the evidence as already given it is clear that the question of guilt or innocence of plaintiff in error was one for the jury. Nolan's testimony, though that of an accomplice, when coupled with the positive identification by the witness Thomas and the fact that plaintiff in error at the time of his arrest gave a false name and stated that he had gotten this money from the sale of homebrew, tends strongly to prove the charge of the indictment

against plaintiff in error. The alibi witnesses do not positively cover all of the time between five and eleven o'clock of the evening of October 21. We are of the opinion that the jury was justified in returning a verdict of guilty, and the first point cannot be sustained.

It is next objected that it was error to introduce in evidence the money found on plaintiff in error at the time of his arrest. The indictment charged the theft of the various classes and kinds of United States currency issued by the government. The indictment also averred that a better and more particular description of the money was to the grand jurors unknown. It is contended that this evidence was incompetent and irrelevant as it did not tend to prove the issues. It was United States currency found on plaintiff in error at the time of his arrest. He stated that he had procured this money by the sale of homebrew and the inference from the testimony of the alibi witnesses is that he won it in the dice game. In *Bishop* v. *People,* 194 Ill. 365, cited by counsel for plaintiff in error on this point, the accused was charged with stealing certain copper wire. A roll of copper wire introduced in evidence had been found not in the possession of the defendant but in the possession of another man to whom it was claimed defendant had sold it. In that case there was no evidence of the description of the wire taken, and the similarity of all copper wire caused this court to say that such evidence was unsatisfactory. The cause, however, was reversed on other grounds. In *Schultz* v. *People,* 210 Ill. 196, cited by plaintiff in error, certain jewelry was admitted in evidence the theft of which was not charged in the indictment. Its introduction was held error. In *People* v. *Kohn,* 290 Ill. 410, jewelry was admitted in evidence which was the proceeds of a robbery other than the one with which defendant was connected. These cases are not authority for the contention that it was error to admit the currency in evidence. The exhibits were not shown to be the currency stolen, but

their introduction in evidence was not harmful to plaintiff in error. It was not error to introduce the currency in evidence, and plaintiff in error's second point cannot be sustained.

As a third point, it is argued that there was no evidence on behalf of the prosecution describing the money alleged in the indictment to have been stolen. The indictment charged, as we have seen, that various kinds of currency issued by the United States government had been stolen, enumerating them. The proof shows that United States currency to the extent of $1280 had been stolen from the safe of The Fair. The money taken from plaintiff in error was in evidence, but he has not preserved a description of it in the bill of exceptions filed. In the absence of such description it will be presumed that the currency offered in evidence was of the character described in the indictment.

It is argued that while the indictment alleges that a better description of the banks of issue and the denominations of the currency were unknown, the court erred in failing to require the State to prove that such facts were unknown to the witnesses testifying before the grand jury. Such is not the rule. The rule is that an indictment need not be more specific than the evidence before the grand jury, but if it affirmatively appears on the trial that a better description than that embodied in the indictment was known to the grand jury, the indictment will not sustain a conviction. *People* v. *Sapp,* 282 Ill. 51; *People* v. *Hunt,* 251 id. 446.

On a review of the whole record we are of the opinion that the judgment should be sustained. No reversible error appears in the ruling of the court, and the testimony fully justifies the verdict of the jury.

The judgment is therefore affirmed.

*Judgment affirmed.*