JOHN J. FARRIS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 15, 1889.*

1. ALLEGATIONS AND PROOFS—*should correspond.* It is the general rule, that in all cases, civil or criminal, the evidence must be confined to the points in issue; but there is a greater reason for strictly enforcing the rule in criminal cases than in civil cases.

2. No fact which, on principles of sound logic, does not sustain or impeach a pertinent hypothesis, is relevant, and no such fact should therefore be admitted as evidence on the trial, unless otherwise provided by some positive prescription of law.

3. This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, for the reason such evidence tends to draw away the minds of the jurors from the point in issue, and excite prejudice, and mislead them, and because the adverse party, having no notice of such course of evidence, is not prepared to rebut it.

4. EVIDENCE IN CRIMINAL CASES—*proof of other offenses.* It is a general rule, that evidence of a distinct, independent, substantive offense can not be admitted on the trial of the defendant for another and different offense, unless it clearly appears that such evidence tends in some way to prove him guilty of the crime for which he is being tried.

5. To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by connection which shows that he who committed the one must have done the other. If the evidence be so dubious that the court does not clearly perceive the connection, the benefit of the doubt should be given to the accused, instead of suffering the minds of the jury to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt.

6. Where the facts and circumstances amount to proof of a crime other than that charged, and there is ground to believe that the crime charged grew out of it, or was in any way caused by it, such facts and circumstances may be proved to show the *quo animo* of the accused.

7. Evidence of the commission of a crime other than the one for which the defendant is being tried, is admissible when the object is to prove guilty knowledge, as, in a prosecution for passing counterfeit money; or to prove an act was not accidental or done by mistake, as

in a case of poisoning or embezzlement; or to prove motive, as on the trial of a husband for the murder of his wife, in which case, in the absence of direct evidence, proof of his adultery with another woman has been held competent; or in cases where the prisoner says he did not do the act, and supports his denial with the assertion that no motive existed within him for the commission of the crime; or to refute some anticipated defense.

8.   On the trial of one for murder, by shooting, it appeared that the person killed had shortly before the homicide married the prisoner's former wife; that the prisoner came to the house of the deceased while the family were at dinner, and fired two shots at the deceased as he was rising from the table, one or both of which killed him; that he then threatened to shoot the wife, and after pursuing her to prevent her getting away, and bringing her back to the house, he, about a half hour after the shooting, and after some conversation and moving about, compelled the wife of the deceased go with him into a house, where he ravished her. All the evidence in respect to the rape, and the circumstances thereof, was objected to by the defendant, but the court admitted the same. There was no other evidence connecting the two acts,—the homicide and the rape: *Held*, that the court erred in allowing evidence of the rape to go to the jury.

9.   It was insisted that the evidence of the subsequent rape was proper, for the purpose of showing a motive for the homicide; but the court held, that while, in cases of doubt as to whether the party charged did the criminal act, proof of motive was important and proper, yet as the People had shown the deliberate shooting by the accused under circumstances showing both express and implied malice, proof of motive was unnecessary to a conviction, and that while the prosecution doubtless had the right to add to that proof, there was error in admitting the evidence of the rape when it was not necessary, as it was highly calculated to inflame and prejudice the jury, who, under the law, had the right to fix the punishment at imprisonment, or the death penalty.

WRIT OF ÉRROR to the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

Mr. H. W. MASTERS, Mr. M. C. QUINN, and Mr. ARTHUR KEITHLEY, for the plaintiff in error:

The plaintiff in error was charged, alone, with the crime of murder, and it was error to admit evidence of a subsequent distinct and independent crime, highly calculated to prejudice the jury.   If the proof had shown that the homicide was com-

mitted for the purpose of gratifying his lust, then the evidence admitted was proper. The motive of the killing, it is apparent, was not lust, or the opportunity for its gratification, and hence this proof of a distinct crime from that for which the defendant was being tried was clearly error. *Watts* v. *State,* 5 W. Va. 532; *People* v. *Jones,* 31 Cal. 565; *State* v. *Shuford,* 69 N. C. 436; *Dunn* v. *State,* 2 Ark. 229; *Shaffner* v. *Commonwealth,* 72 Pa. St. 60.

The evidence is not admissible unless it has a direct tendency to prove the particular crime charged. *State* v. *Harold,* 38 Mo. 496.

If improper testimony has been admitted, the court can not look to the whole case to determine whether or not there be other testimony sufficient to establish the defendant's guilt. *Draper* v. *State,* 22 Texas, 400.

The proof should have no reference to any of the prisoner's conduct not connected with the charge upon which he is being tried. *Hopps* v. *People,* 31 Ill. 385.

Evidence of prior misconduct of the accused is never admissible, except to prove malice or guilty knowledge. *Gifford* v. *People,* 87 Ill. 211.

We take it, that it would be idle to insist that this proof showed acts that were not a part of the *res gestæ,* as it will not be contended that it does. Bishop defines the *res gestæ* to be or consist of two parts, viz: First, the accompanying acts; and second, the declarations attending them. And it would be a hopeless task to show that the act the proof of which we complained of comes under either of these two definitions. Bishop on Crim. Proc. sec. 1085.

For the purpose of proving guilty knowledge, evidence of similar substantive offenses, founded upon other and different transactions, may be proved,—such as passing counterfeit money, and the like. But this is the exception to the rule, and does not obtain in this case. *Baker* v. *People,* 105 Ill. 452.

In a civil suit for assault and battery, to recover damages, this court held that evidence of slanderous matter, or other improper conduct of the defendant likely to influence the verdict of the jury, was error, and reversed the judgment and remanded the cause for such error. *Sutton* v. *Johnson*, 62 Ill. 209.

The court has no power in a capital case to affirm merely because they are persuaded that upon the merits the judgment was right, but if error has intervened it will be assumed to be injurious to the prisoner, and he is entitled to a reversal. *People* v. *Williams*, 18 Cal. 187.

It was a grave and serious error to permit it to go to the jury, and especially is this true in a capital case. The proof of such matter would be error and ground for reversal in cases of much less importance than the one now before your honors. "Relevancy is to be determined by free logic, unless otherwise settled by statute or controlling precedent. All facts that go either to sustain or impeach a hypothesis logically pertinent, are admissible; but no fact is relevant which does not make more or less probable such a hypothesis." Wharton on Crim. Ev. (9th ed.) sec. 20.

Mr. GEORGE HUNT, Attorney General, for the People:

When the particular act charged against the prisoner is to be collected from other acts done by him, all of them constituting one entire transaction, or mutually explanatory of each other, the court may allow the prosecution to go into the whole. 1 Phillips on Evidence, 767, 768; *People* v. *Wood*, 3 Park. Cr. 683; *People* v. *Marble*, 38 Mich. 123; Roscoe on Evidence, 93; *Heath* v. *Commonwealth*, 1 Rob. (Va.) 796; *Osborne* v. *People*, 2 Park. Cr. 584; *Mason* v. *State*, 42 Ala. 532; *Phillips* v. *People*, 57 Barb. 553; *Haskins* v. *People*, 16 N. Y. 344; *People* v. *Doyle*, 21 Mich. 221; *Coleman* v. *People*, 58 N. Y. 555; *People* v. *Mead*, 50 Mich. 228; *Commonwealth* v. *Tuckerman*, 10 Gray, 198; *Rex* v. *Mogg*, 4 C. & P. 364; *Rex*

*v. Geering,* 18 Law J. (N. E.) 216; *Regina* v. *Dossett,* 2 C. &
K. 306; *Regina* v. *Gray,* 4 F. & F. 1102; *Hope* v. *People,* 83
N. Y. 418; *Commonwealth* v. *Ferrigan,* 44 Pa. St. 386; *State*
v. *Nugent,* 71 Mo. 137.

The matter in question was also a part of the *res gestæ.*
"The surrounding circumstances constituting parts of the *res
gestæ,* may always be shown to the jury along with the prin-
cipal fact. The principal points of attention are, whether the
circumstances and declarations offered in proof were contem-
poraneous with the main fact under consideration, and whether
they were so connected with it as to illustrate its character."
1 Greenleaf on Evidence, sec. 108.

Mr. KINSEY THOMAS, States Attorney, also for the People.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

At the August term, 1888, of the Fulton circuit court, plain-
tiff in error was indicted for the murder of one Stephen Mc-
Gehee. On his petition the venue was changed to Peoria
county, and at the December term, 1888, of the circuit court
of that county, he was found guilty of murder, and sentenced
to be executed. He sues out this writ of error, and urges a
reversal of the judgment below, principally on the ground that
the trial court erred in admitting improper evidence on behalf
of the People, to his prejudice.

Mrs. Debbie McGehee, wife of the deceased, was the prin-
cipal witness in the case. She had been married to the de-
fendant, Farris, but had obtained a divorce from him, and on
February 28, 1888, married the deceased. She had not lived
with the defendant since May 9, 1884. She testifies that
about noon, on the 18th of April, 1888, while she, her hus-
band and the children were eating dinner, defendant came to
the east door of the room in which they were sitting, with a
revolver in his right hand. Her husband spoke to him, saying,
"How do you do?" He replied, "How are you?" and imme-

diately said, "You damned son of a bitch, I have come to kill you, and I am going to do it;" that McGehee started to get up, when the defendant fired upon him, and was about firing the second shot, when deceased, still being in the act of rising, exclaimed, "Oh! don't!" The second shot was fired, and McGehee fell. There is no dispute as to the fact that by one or both of these shots McGehee was instantly killed. Immediately the defendant threatened to kill Mrs. McGehee, but she and her little boy succeeded in forcing him out of the house, and overcame him. He then begged them to let him up, and upon his promising that he would not kill her, they did so. Thereupon he proposed to go in the house and get some coffee, but she told him that none had been prepared for dinner, and as he and the children went in the house she ran in the direction of one of the neighbors. She had gone but a short distance when she discovered that he was pursuing her, and calling upon her to stop. He came up to where she was, and again threatened to shoot her. She sat down on the ground, and he and the children also sat down near her, and she says they then had some conversation, in which he inquired why she married McGehee, and said that her mother had told him to kill McGehee. They remained there a short time, when she asked him to hitch up the team for her, so that she might go to her parents, and he promised to do so. They went to the barn, he going in but she remaining at first outside. He commanded her to come on in. At this point an objection was made, by counsel for defendant, as to any evidence of what took place there, upon the ground "that it was no part of the *res gestæ;*" and in ruling upon that objection the court held and stated that the prosecution "might prove that the defendant committed the crime of rape upon Mrs. McGehee within a reasonable time after the killing, upon the theory that such evidence tended to prove the motive or intent with which the homicide was committed." She then proceeded to testify that she went in the barn upon his demanding that

she should, and sat down, and that they there had some further conversation, but not about McGehee. He finally refused to hitch up the team, and they left the barn and "started to town." He made some inquiry as to what was kept in an old house near by, and proposed to go in and see. He went in and told her to come in, but she refused until he again told her to do so, when, through fear, she obeyed. Before they went in he gave the revolver to the little boy, and sent the children to the barn. He then made an indecent proposal to her, which she refused. Thereupon he struck her, and pushed her against the side of the house, she resisting, and attempting to push him away. Counsel for the People then asked her, "What did he do?" Answer, "He mistreated me." Question, "What then occurred? You need not have any hesitancy about telling what was done there. The jury want to know all the facts." And counsel proceeded, by direct questions, to prove by her that the defendant then and there committed a rape upon her. This occurred, as she testifies, about a half hour after the shooting.

As to the circumstances connected with the shooting, Mrs. McGehee is fully corroborated by Eddie Farris, a son of defendant and herself, about eleven years old. The evidence shows that defendant was intoxicated to some extent, and had been drinking for several days; but Mrs. McGehee swears that he knew what he was doing, and there is no reason to doubt her evidence as to that fact. After the evidence of Mrs. McGehee it was also shown by the State that defendant recently, prior to the killing, made threats against deceased. The only attempt at justification was, that the shooting was done in self-defense, and it is not now claimed that there was any substantial proof in the case upon which to base it.

The foregoing statement will be found sufficiently full for a satisfactory consideration of the question whether or not it was competent for the prosecution to prove the crime of rape,

as allowed by the court below, that being the only question which we deem it important to notice.

The general rule, that evidence of a distinct, substantive offense can not be admitted in support of another offense, is laid down by all the authorities. It is, in fact, but the reiteration of the still more general rule, that in all cases, civil or criminal, the evidence must be confined to the point in issue, it being said, however, by authors on the criminal law, that in criminal cases the necessity is even stronger than in civil cases of strictly enforcing the rule, for where a prisoner is charged with an offense, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment and matters relating thereto, which, alone, he can be expected to come prepared to answer. 3 Russell on Crimes, (5th ed.) 368; 1 Roscoe on Crim. Evidence, (8th ed.) 92.

"No fact which, on principles of sound logic, does not sustain or impeach a pertinent hypothesis, is relevant, and no such fact, therefore, unless otherwise provided by some positive prescription of law, should be admitted as evidence on a trial. The reason of this rule is obvious. To admit evidence of such collateral facts would be to oppress the party implicated, by trying him on a case for preparing which he has no notice, and sometimes by prejudicing the jury against him. * * * To sustain the introduction of such facts they must be in some way capable, as will presently be seen more fully, of being brought into a common system with that under trial." (Wharton on Crim. Evidence, sec. 29.) "In criminal cases there are peculiar reasons why the test before us should be applied to proof of collateral crimes." Ibid. sec. 30.

"This rule," says Greenleaf, vol. 1, sec. 52, (not confining it to criminal cases,) "excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute,—and the reason is, that such evidence tends to draw

away the minds of the jurors from the point in issue, and to excite prejudice, and mislead them; and, moreover, the adverse party having had no notice of such a course of evidence, is not prepared to rebut it."

In *Sutton* v. *Johnson,* 62 Ill. 209, which was a civil suit, for an assault and battery, and assault with intent to commit a rape, a witness on behalf of the plaintiff was allowed to testify that the defendant had told him "that he and his wife had not been getting along well together, and he had to be too intimate with the hired woman, or was forced to be too intimate with the hired woman," not stating who the woman was, and for that error alone a judgment in favor of the plaintiff was reversed, Mr. Justice SHELDON saying in the opinion rendered: "This evidence did not tend to prove the assault, * * * and did tend to prejudice the jury against the defendant. There should not have been brought into the trial of the simple issue in this case, anything which might be regarded as slanderous matter, or other improper conduct of the defendant, to make against him, and by its consideration be likely to influence the verdict of the jury."

It is conceded that the mere fact that testimony may tend to prove the commission of other crimes, or to establish collateral facts, does not necessarily render it incompetent, provided it is pertinent to the point in issue, and tends to prove the crime charged; but the general rule is against receiving evidence of another offense, and no authority can be found to justify its admission, unless it clearly appears that such evidence tends, in some way, to prove the accused guilty of the crime for which he is on trial. Says AGNEW, J., in *Shaffner* v. *Commonwealth,* 72 Pa. St. 65: "To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or it must be necessary to identify the person of the actor by connection which shows that he who committed the one must have done the

34—129 ILL.

other." And he adds: "If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt."

In *Lapage* v. *State*, 57 N. H. 245, CUSHING, C. J., after citing many cases in which such proof was held competent, and showing that in each of them some logical connection existed between the independent crime proved and that charged, says: "It should also be remembered, that this being a matter of judgment, it is quite likely that courts would not always agree, and that some courts might see a logical connection when others could not. But however extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved, other than the tendency to commit one crime, as manifested by the tendency to commit the other."

In *Commonwealth* v. *Ferrigan*, 44 Pa. St. 386, THOMPSON, J., says: "The rule on this subject may, in substance, be stated to be, that when facts and circumstances amount to proof of another crime than that charged, and there is ground to believe that the crime charged grew out of it or was in any way caused by it, such facts and circumstances may be proved, to show the *quo animo* of the accused."

Again, in *Commonwealth* v. *Merriam*, 14 Pick. 518, PUTNAM, J., said: "Evidence should be excluded which tends only to the proof of collateral facts. It should be admitted if it has a natural tendency to establish the fact in controversy. If the evidence is irrelevant it should be rejected, for two reasons: First, it would have a tendency to mislead the jury from the true subject of the inquiry; and second, no man is to be expected to go to trial prepared to prove things which are unconnected with the issue."

Our conclusion from all the authorities is, that whatever be the object of the testimony,—whether to prove guilty knowledge, as in prosecutions for passing forged notes or counterfeit money, where proof of other offenses of the same kind is competent; to prove that the act was not accidental or done by mistake, as in case of poisoning or embezzlement; to prove motive, as on trial of a husband for the murder of his wife, in which case, in the absence of direct evidence, proof of adultery by the prisoner with another woman was held competent; or in cases where the prisoner says he did not do the act, and supports his denial with the assertion that no motive existed within him for the commission of such a crime, or to refute some anticipated defense,—proof of a distinct, substantive crime is never admissible, unless there is some logical connection between the two, from which it can be said the one tends to establish the other. In this case it must be borne in mind that there is no evidence whatever connecting the two acts, or tending to show wherein the commission of the rape had any bearing upon or tendency to explain the commission of the homicide, and therefore, if it be held that evidence of the one tended to prove the other, it must be upon the ground that there is some natural or obvious connection between the two acts. Did the proof of rape in this case tend to prove defendant guilty of murder? What element in the crime of murder was wanting when this evidence was admitted, or what fact in evidence necessary to make out the crime of murder did it tend to strengthen or corroborate? It seems clear to us that these are questions which puzzle the legal mind, and can only be answered so as to sustain the admissibility of the evidence in question, if at all, by drawing exceedingly fine distinctions.

To the other question,—was it not evidence calculated to inflame the minds of the jury, and prejudice them against the defendant, rather than prove him guilty of murder,—the answer is obvious. It is insisted that the object was to show a

motive, and for that purpose the learned judge held it competent. In the first place, under the facts proved it was not necessary to prove a motive. In cases of doubt as to whether the party charged did the criminal act, proof of motive is important, and often decisive; but in this case, the State having shown the deliberate shooting, under circumstances showing both express and implied malice, proof of motive was not necessary to a conviction; and while the prosecution doubtless had the right to add that proof by competent evidence, it may well be doubted whether testimony so strongly calculated to prejudice the jury against the defendant should have been admitted, even though it tended to prove a motive, such proof not being necessary to the case. But no theory has been suggested upon which it can be said that the commission of the crime of rape tended to show a motive for the homicide, and after a most careful examination of all the evidence, and a consideration of it in all its phases, we can discover no rational connection between the two acts, whereby it can be inferred that desire, purpose or intent to commit the crime upon Mrs. McGehee could have influenced the mind of defendant to take the life of deceased. To so hold seems to us not only illogical, but unnatural and unreasonable.

It is contended by counsel for the People, that the prosecution had a right to show all that the defendant did from the time he came to the place of the killing until he left it, as parts of one and the same transaction. Here again we must deal with the question, when is it competent to prove a crime distinct from the one for which the accused is on trial? We have already seen, the general rule of evidence excludes such proof. An exception to that rule allows it when the acts form one transaction. (1 Wharton on Crim. Law, sec. 649.) As in *Heath's case*, where it was held competent to show, under the circumstances of the case, that the prisoner, shortly before the killing, shot a third person, notwithstanding the evidence tended to prove a distinct felony, *such shooting and the killing*

*of the deceased appearing to be connected as parts of one trans-
action.* (1 Rob. Va. 735.) Or where, on trial for breaking
into a booking office, evidence was admitted that the prisoner
had on the same night broken into three other booking offices
belonging to three other stations on the same railway, *the four
cases being all mixed up together.* (*R.* v. *Cobden*, 3 F. & F. 76.)
The same principle obtains when it is sought to prove some
distinct act as part of the *res gestæ*, in which case "the prin-
cipal points of attention are, whether the circumstances and
declarations offered in proof were contemporaneous with the
main fact under consideration, *and whether they were so con-
nected with it as to illustrate its character.*" (1 Greenleaf on
Evidence, sec. 108.) Here, as we have said, there is no proof
to connect the two acts, nor is there any such obvious relation
between them that it may be inferred that the one in any way
characterized the other. We are convinced that there is no
theory upon which the competency of this testimony can be
sustained, without breaking down firmly established rules of
evidence.

It is suggested, and pressed by way of argument, that al-
though the trial court may have erred in allowing this proof,
yet, the case being so clearly made out by other evidence and
the defense so utterly futile, the error should be held harmless.
If the only punishment for the crime of murder in this State
was death, the point would be entitled to weight. If it was
within the province of the court to assume that the jury would
have inflicted the death penalty because the proof of guilt jus-
tified it, or if our decision was to affect this case alone, we
might hesitate to order a reversal on this theory. The legis-
lature has seen fit to clothe juries with a wide discretion in
fixing the punishment to be inflicted upon one convicted of
murder. Every defendant on trial for that crime is entitled
to the full benefit of the statute. When all else has failed
him, he has a right to stand before a jury unprejudiced by
incompetent, irrelevant evidence, and appeal to them to spare

his life. It is impossible for us to know what the jury in this case would have done but for the introduction of this incompetent evidence, much less is it our province to say what they should have done, and no opinion is expressed on that subject. We can only judge of the influence of such testimony upon the minds of the jury by experience and observation common to us all. Here was proof of a distinct felony,—the disgusting and abhorrent facts attendant upon the commission of that most brutal and infamous crime given in detail. No one need be told that from that moment, if the evidence was believed, all feeling of commiseration and mercy toward the defendant must have fled the minds of the jury. There was left for him no possible escape from the death penalty. But aside from all these considerations, we are required to settle a rule of evidence in criminal trials, not merely with reference to this case, but in consideration of future consequences and other rights, and we can not, from that consideration alone, hesitate to hold that there was such manifest and prejudicial error in the admission of evidence by the trial court in this case as must work a reversal of its judgment.

The judgment will be reversed.

*Judgment reversed.*

MAGRUDER, J.: It does not seem to me to be right to reverse this judgment. I cannot concur in the opinion.

SHOPE, C. J.: I can not concur in the conclusion reached by the majority of the court.