DANIEL RAINES *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW AND PROCEDURE.   *Misconduct of audience.   Applause.*

   Misconduct of an audience, committed to affect the result of a trial, may infect the proceeding with fatal error.   If an audience applaud the oration of a prosecuting attorney, the trial court should take prompt and decisive action to rebuke the breach of propriety and admonish the jury not to be misled by it.

2. SAME.   *Evidence, scope of.*

   Evidence should be confined to the issue joined, and in criminal cases it should be directed exclusively to the transactions of which the indictment is predicated.

3. SAME.   *Previous crimes.*

   Upon the trial of an indictment, a previous crime committed by defendant can be proved only:
   (*a*) Where it is connected with the one charged in the indictment, and sheds light upon the motive of defendant; or,
   (*b*) Where it forms a part of a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts; or,
   (*c*) In cases of conspiracy, uttering forged instruments or counterfeit coin and receiving stolen goods, for the sole purpose of showing a criminal intention.

4. SAME.   *Murder.   Evidence.   Case.*

   It was error for the trial court, over the objection of a defendant on trial for the murder of his wife, to permit the state to prove:
   (*a*) That defendant had cursed and ill-treated the deceased for ten years before her death, and had committed many simple assaults upon her;
   (*b*) That three weeks before her death the accused, while drunk, told deceased that he would divorce her because she was slovenly in her dress;
   (*c*) That shot holes were in the walls of defendant's residence, there being nothing to show when or how they were made;
   (*d*) That a witness who denied that defendant had made incriminating statements to him had told others that such statements were made by defendant.

5. SAME. *Instructions. Legal presumptions.*

Where the circumstances of a killing are fully laid before the jury, instructions announcing legal presumptions should not be given.

6. SAME. *Malice. Use of deadly weapon.*

Only a deliberate killing of a human being by the use of a deadly weapon imports malice, and where the defense is that the killing was accidental, an instruction informing the jury that malice may be inferred from the use of a deadly weapon, should not be given.

FROM the circuit court of Lee county.

HON. EUGENE O. SYKES, Judge.

Raines, the appellant, was indicted for the murder of his wife, Sarah; he was tried, convicted and sentenced to the penitentiary for life, from which conviction and sentence he appealed to the supreme court. The facts are stated in the opinion of the court.

*Anderson & Long*, for appellant.

The testimony introduced by the state for the purpose of showing malice, motive or intent was incompetent and irrelevant, because all the transactions detailed by the witnesses were either too remote in time, or not of such character as to amount to a threat, or have no relation to or bearing on the question of motive or intent.

The testimony of the witnesses who deposed to long antecedent acts of cruelty by appellant to his wife should not have been admitted because the facts they relate are too remote to have any bearing on the issue, in view of the fact that it is shown by all the testimony, both for the state and the defendant, that the defendant and his wife for all the years afterwards lived together as man and wife. *Herman* v. *State*, 75 Miss., 340 ; *Holt* v. *State*, 78 Miss., 631 ; *Abbott* v. *Commonwealth*, 130 Mass., 472 ; *Cotton* v. *State*, 17 So. Rep., 372 ; *Farris* v. *People*, 16 Am. St. Rep., 283.

In order for past conduct, threats or other offenses to be admitted in evidence against one charged with crime, there are

two essentials : First. They must not be too remote. Second. They must be of such a character and so connected with the crime charged as to show that the same wicked and depraved heart, and the same motive and intent as prompted one must have prompted the other. There must be some connection between the acts. Each act introduced must form a link in the chain of circumstances leading up to the final culmination of the original purpose. In all the cases, so far as we are informed, where evidence of other crimes, threats, etc., have been admitted in evidence, there was no evidence of a reconciliation, and the facts showed that the state of mind of the defendant towards the deceased had never changed up to the time of the killing.

A witness for the defense was asked on cross-examination by the state if, at the burial of Mrs. Raines, he did not state to one Isom Kelley, that when he reached defendant's home on the night his wife was killed, the defendant asked him if he had better claim it was an accident or skip out? Witness answered that he made no such statement to Kelley. The court then permitted the state in rebuttal to put Kelley on the stand and contradict this witness. It was clearly not competent to prove as a substantive fact that witness Raines made such a statement, for it would have no bearing whatever on the question of the guilt or innocence of the defendant. It follows that it could not be proven for the purpose of contradiction alone. There was no attempt made by the state to prove that defendant made any such statement, but only to prove that the witness, Raines, had said to Kelley that he had made such a statement. The law is, that if a witness is examined in respect to a matter not brought out on direct examination, which would not be competent if offered by the cross-examiner, the same is collateral and cannot be contradicted. *Williams* v. *State*, 73 Miss., 820; *Jeffries* v. *State*, 77 Miss., 757; *Naugher* v. *State* (Ala.), 23 So. Rep., 26.

The court below ought to have granted a new trial on ac-

count of the applause given by the audience to the prosecuting attorney's speech for the state. Can this court say that the jury was not influenced by this applause? What did it mean? It meant that two or three hundred persons in the court room thought the defendant ought to be convicted, and by their applause they told the jury so. It showed the state of the public mind. It was certainly calculated to influence the jury. Would not each juror in considering his verdict ask himself the question: The people think this man ought to be convicted, if I vote to acquit, and the defendant should be acquitted, the people will be against me, how can I afford this? Suppose two hundred men should confront the jury (against the ruling of the court, if you please, and by force) and tell them that the defendant should be convicted; that the people wanted him convicted, etc., would a verdict of guilty be permitted to stand under those circumstances?

Charge No. 3, for the state, should not have been given, because in this case it virtually tells the jury that the defendant was presumed to have intended to kill his wife.

*William Williams*, assistant attorney-general, for appellee.

We understand the general rule to be "that on the trial of one charged with a particular crime the evidence must be confined to the issue joined as to that specific offense, and that usually evidence showing, or tending to show, the accused's guilt of another offense at some prior time, is incompetent." "This rule, however, is not without exception, and one of the excepted classes is where the evidence of a former distinct offense is offered to show intent or motive in the commission of the crime charged."

The state's theory in this case is that the treatment received by the deceased from the appellant prior to the killing does not come within the general rule, but is within the exception thereto. The testimony offered by the state, and admitted by the court, relative to the way in which appellant conducted

himself towards his wife prior to her death was admissible, to show the motive of appellant for the murder alleged to have been committed by him.

The court had passed upon the admissibility of such evidence as was admitted in this case, and of which counsel for appellant earnestly complains in several cases. We understand that the admissibility of evidence of this kind is controlled by the circumstances and facts in each particular case. We submit that this case falls within the rule announced in *Webb's case*, 73 Miss., 456, and *Story's case*, 68 Miss., 609, and does not fall within the rule announced in *Herman's case*, 75 Miss., 340, and *Holt's case*, 78 Miss., 631, and *Foster's case*, 70 Miss., 755.

The action of the lower court in admitting this testimony seems to be warranted by the rule announced in *Bateman's case*, 64 Miss., 233, and the authorities there cited.

There was no objection nor exception to the testimony of Isom Kelley relative to what Lafayette Raines said to him at the graveyard relative to what Dan Raines, the appellant, had said to him, Lafayette Raines, on the night of the killing.

It is submitted that the objection urged to this testimony does not fall within the rule announced in *Williams' case*, 73 Miss., 820 and *Jeffries' case*, 77 Miss., 757. Even if it had been error to permit Kelley to contradict Raines, it was not such error as would warrant reversal of this case.

The testimony of Kelley was relative to material facts in the case—that is, what appellant said immediately after he had killed his wife.

Counsel for appellant objected to the action of the audience in applauding the concluding speech for the prosecution. The trial court sustained the objection, immediately checked the demonstration, reprimanded the audience and stated that there must be no further demonstratian of any kind during the progress of the trial. What more could a trial court do?

It is submitted that the opinion of the supreme court of North Carolina in *Wilcox's case*, 42 S. E. Rep., 536, should

not be followed by this court in this case. We are free to confess that the audience in attendance upon the trial of this case should not have applauded as it did, but if this court were to hold that such action of an audience in attendance upon a criminal trial constitutes a reversible error, it is submitted that it would be an easy matter for the friends of an accused to conspire together and conduct themselves, while in attendance upon the trial, in such a way as to reverse almost any case wherein one is tried and convicted of an offense.

If the trial court did all in its power to prohibit the appellant from being prejudiced by the act of the audience in attendance upon the trial, it is submitted that no such error was committed as would warrant this court in reversing this case.

TERRAL, J., delivered the opinion of the court.

The appellant, being sentenced to the penitentiary for life upon a conviction of the murder of his wife, presents here many objections to the proceedings against him in the trial court. For a proper understanding of these objections, a brief statement of the matters objected to will be necessary. The record recites: "Immediately upon the conclusion of the argument for the prosecution, the audience began a demonstration of applause, which was immediately checked by the court by rapping on the table. The audience was reprimanded for it, and the court stated that there must be no further demonstration of any kind during the progress of this trial. There was a large crowd in the court room." The record disclosed that there was no eye witness to the killing. The evidence of it was entirely circumstantial, and the proof on the part of the state was substantially made by the sheriff of the county, who testified that the defendant told him of the kill ing,—"just said to me it was an awful thing; he would not have had it to happen for the world; and that it was an accident." Bill Johnson testified that he lived at Raines' four years; worked there five years, and commenced working for

him at his mill ten years ago ; and, all the time he was there,
Raines treated his wife pretty rough,—cursed her, beat her,
whipped her, and caused her a miscarriage ; that Raines tried
to make witness' horse jump on her in the entry ; got on her
with one knee ; pulled her hair ; slapped her ; pulled her nose
and ears,—and much more of like conduct, which witness said
continued through the ten years he was acquainted with them.
Charles Mathews testified that, two or three weeks before
the killing, he heard the defendant say to his wife that he
was going to get a divorce from her because she would not
dress up.  Susan Duncan testified that Raines made threats
against his son, and added he believed his mammy was uphold-
ing his son in what he objected to in him.  Other similar evi-
dence was offered and laid before the jury, all against the
earnest objection of counsel for appellant.  One Lafayette
Raines, a witness for the defendant, was, upon cross-examina-
tion, asked if the defendant had not made to him a statement
bearing some implication of guilt, which he denied, and yet
Isom Kelley was allowed to prove that Lafayette Raines had
made such statement ; thus getting before the jury as a con-
fession of Raines what no witness pretended he ever said.
Signs of shot holes in the walls of the residence of Raines—
when and by whom made being unproven—were also given in
evidence of the guilt of the defendant.

That the misconduct of the audience or of others, strangers
to the proceeding, when done to affect the result of the case,
may infect it with fatal error, is established by many cases in
the books, not necessary to here note.  The applause given by
the audience at the close of the oration of the prosecuting
counsel was intended, doubtless, to influence the verdict of the
jury, and was a gross breach of the proprieties of the occasion,
and an undisguised affront to the authority of the court.  In
*Cartwright* v. *State*, 16 Tex. App., 473 (49 Am. Rep. 826),
in a matter of applause by the audience in like circumstances,
which was not in any way noticed by the trial court, Judge

Wilson said : " We think the court should have taken prompt and decisive action•on the occasion, and should have endeavored, by its condemnation of the proceeding and its admonition to the jury, to prevent any prejudice to the defendant by such reprehensible conduct." The court in the present case promptly checked the demonstration and reprimanded the audience, yet the want of any admonition to the jury not to suffer itself to be misled by the applause of the audience renders the point made here of the gravest difficulty. In view, however, of the fact that the judgment rendered in this case must be set aside for other grounds of error, we have thought it unnecessary to determine whether this unseemly incident is a fatal infirmity in the case.

The record discloses that there was no eye-witness to the killing charged upon the defendant. The evidence of it was entirely circumstantial, and the proof on the part of the state was substantially made by the sheriff of the county, who testified that the defendant told him of the killing of his wife,— "just said to me it was an awful thing; he would not have had it to happen for the world; and that it was an accident." All the further proof in the case on the part of the state was in the effort to show the killing was not accidental, but was purposely and willfully done. The proof is partly noticed above, and consisted of many separate and distinct beatings or cursings of Mrs. Raines, committed at various times, running back many years, of one instance of a threat to get a divorce from her, and of continuous unpleasant relations of their married life. The several distinct offenses proven against the defendant, as well as the repeated cursings and continuous ill treatment of his wife, extended back before the killing, to a period of ten years. Objection to this species of evidence as incompetent and illegal was made by appellant's counsel in the court below, and is repeated to us here. Counsel for the state insists on its competency and applicability, and cite to us in its support *Webb's case*, 73 Miss., 456 (19 South., 238), and *Story's*

*case*, 68 Miss., 609 (10 South., 47). But we find that in each of these cases the circumstances put in evidence to show a motive for the killing were not separate and distinct offenses, but were matters that had apparent and obvious relation to the murder charged, and for which they were on trial, and happened in each case only a short time before the killing. The admission of the evidence in those cases meets our entire concurrence. It is a general rule of law that the evidence must be confined to the point in issue, and that in criminal cases, especially, the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment. Roscoe, Cr. Ev. (6th ed), 85-95; 1 Greenl. Ev., pt. 2, ch. 1.; *Herman* v. *State*, 75 Miss., 340, 345 (22 South., 873); *Holt* v. *State*, 78 Miss., 631 (29 South., 527); *Farvis* v. *People*, 129 Ill., 521 (21 N. E., 821; 4 L. R. A., 582; 16 Am. St. Rep., 283). It is only where the previous crime is connected with the one for which the defendant is on trial, and where it sheds light upon the motive of the accused, that it can be proven against him, unless it form a part of a chain of facts so intimately connected that the whole must be heard in order to interpret its several parts. Evidence of the conduct of the accused on other occasions, though disconnected from the offense on trial, is frequently admitted in cases of conspiracy, uttering forged instruments and counterfeit coin, and receiving stolen goods—not, however, for the purpose of inducing the jury to believe the accused guilty of the crime for which he is on trial, because he had committed another similar crime, but for the purpose of excluding him from setting up the defense that he did the act innocently and without knowledge of its guilt. In such cases evidence of other similar offenses is admissible, because the act for which the defendant is being tried is mostly of an equivocal kind, from which *malus animus* is not a necessary presumption ; and such evidence is allowed in order to show a criminal intention. But it is rare that evidence of other similar offenses is received upon

the trial of a crime. It is true, no evidence touching the guilt of the accused in the particular case on trial, of whatever sort, is rejected merely because it may disclose another offense; but the acts relating to other offenses, to be admissible, except in the class of cases above noted, or other like cases, must be intimately connected with the offense on trial, and must afford reasonable ground of belief of a connection between them. *Rex* v. *Clewes*, 4 Car. & P., 221 (19 E. C. L., 354); *Foster* v. *State*, 70 Miss., 756, 767, 768 (12 South., 822). In cases of murder, threats to kill, made recently before the killing, or recent attempts to kill, are admissible in evidence, as tending to characterize the case on trial. In *Herman's case*, 75 Miss., 345 (22 South., 873), a felonious assault, given in evidence to show motive, was held to be incompetent, because it occurred nearly twelve months before the homicide. We are of the opinion that the instances contained in the record of the cursings of the deceased by the defendant, whether taken collectively or singly, were incompetent as evidence against the defendant, and were harmful and illegal. We further think that the many simple assaults of the deceased by the defendant, whether collectively or separately considered, were incompetent as evidence against the defendant, and were hurtful and injurious to his side of the question then under investigation by the jury; that the signs of shot holes in the walls of defendant's residence, when or how done being unproven, were wholly irrelevant; and we are at an utter loss to see how his chiding declaration to his wife, made while drinking, though only three weeks before the awful tragedy, that he would divorce her because she would not dress up, could be put in the balance against the liberty and life of the wretched defendant. We think it was also incompetent to get before the jury, as a confession of the defendant, what Lafayette Raines denied he had said, by proving by Isom Kelley that Raines had made such statement to him as coming from defendant.

The third instruction for the state, which is based upon the

principle of law that one is presumed to intend what he does, and the fourth instruction, that declares malice may be inferred from the use of a deadly weapon, are inapplicable to the facts of this case. The circumstances relating to the killing were, so far as known, fully laid before the jury, and should have been left to their determination without the aid of either of the presumptions here invoked. It is not the mere killing, but the deliberate killing by the use of a deadly weapon, that imports malice. Here the only debatable point before the jury was whether the gun was deliberately or accidentally fired by the defendant. And the fourth instruction was erroneous in making the use of the gun decisive against the defendant, merely because it was a deadly weapon. Whether the gun was accidentally or deliberately fired was a question which should have been left to the free determination of the jury, uncontrolled by the presumption imposed upon them.

For the errors herein pointed out, the judgment is reversed, verdict set aside, and a new trial is granted.

*Reversed and remanded.*