THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST HARRISON, Plaintiff in Error.

*Opinion filed February 21, 1914.*

1. CRIMINAL LAW—*principle upon which statements accusing a person of crime are admitted in evidence.* The principle upon which statements made in the presence of one accused of crime are admitted in evidence against him is, that his silence, when he might, and naturally would, deny the accusations of guilt if they were untrue, is regarded as an acquiescence in their truth and an implied admission of guilt.

2. SAME—*when statements in nature of accusations are not admissible.* Unless the words or conduct of the accused, under the circumstances, are such that it is a natural and reasonable inference that he admitted the truth of the accusing statements, such statements are not admissible against him.

3. SAME—*general denial of whole statement is sufficient.* If the person in whose presence a statement is made charging him with crime or complicity therein makes a general denial of the whole statement the statement is not admissible against him, and he is not required to deny the statement in the language in which it is made or in detail.

4. SAME—*rule respecting admissibility of accusations denied in whole or in part.* If a person is charged with crime and he unequivocally denies the accusation, and this is the substance of the whole conversation, the accusing statements are not admissible; but if he makes a reply admitting the truth of the statement, wholly or in part, both the statement and reply are competent evidence.

5. SAME—*what is a sufficient denial of the accusing statement.* Where a statement is made in the presence of a person charging him with crime, and such person, after the statement is finished, calls his accuser a liar in profane terms, the statement must be regarded as sufficiently denied and no part of it is admissible.

6. SAME—*when testimony of physicians tending to show rape is not admissible.* On the trial of persons charged with kidnapping a girl for ransom, the acts done by one of the defendants in the course of the kidnapping may be proved even though they incidentally involve proof of rape, and the same is true as respects proof of the general appearance and the condition of the girl on her return, but it is error to permit independent proof of the crime of rape by allowing physicians to testify as to the results of their examination of the girl.

7. SAME—*what should be embodied in instruction as to weighing testimony of accused.* An instruction which singles out the accused from all other witnesses and calls the jury's attention to his interest, or to some other circumstance which may affect his credibility, ought not to be given without also telling the jury that the same test applies to all witnesses, the same as to the accused.

8. SAME—*when defect in one instruction is cured by another.* If two instructions, taken as a whole and read together, contain a correct statement of the rule respecting the test of the credibility of the accused as a witness the accused cannot be said to be prejudiced, although one of such instructions, considered alone, was incomplete.

9. SAME—*when an instruction as to confession should be limited to one defendant.* Where the confession of one of the two defendants implicates the other but is not, under the circumstances, admissible in evidence against such other, it is error to give an instruction authorizing the jury, if they believe the whole confession is true, to act upon it as true; and the error is not cured by the fact that other instructions limit the consideration of such confession to the defendant who made it.

10. SAME—*giving several instructions announcing single rule of law is improper.* The giving of five instructions stating, in varying language, but a single rule of law is improper, as tending to unduly impress the single principle announced upon the minds of the jurors to the possible exclusion of others equally important.

11. SAME—*when crime of kidnapping for ransom is complete.* The crime of kidnapping for ransom is complete when the person is seized and carried away with the intention of secretly confining her against her will, for the purpose of extorting ransom or money or other valuable thing, and the fact that the offender subsequently changes his purpose and commits a rape upon the girl does not relieve him from responsibility for the first crime.

12. SAME—*complete proof of corpus delicti, independent of confessions, is not required.* While the *corpus delicti* cannot be proved by confessions, alone, yet complete proof of the *corpus delicti,* in-

dependent of confessions, is not required; and if there is evidence, independent of the confessions of the accused, tending to prove the crime and showing *prima facie* that the crime charged has been committed, then evidence connecting the accused with the crime, including his confessions, if any, is admissible.

13. SAME—*what is not essential to the crime of kidnapping for ransom.* The kidnapping of a person with the intent and purpose of holding her for ransom constitutes the offense, and it is not essential to prove, in addition to such facts, some act done toward obtaining the ransom or circumstances tending to prove such act.

14. SAME—*persons charged with kidnapping are entitled to instruction that they cannot be punished for rape.* Defendants who are being tried under an indictment charging them with kidnapping a girl for ransom are entitled to have the jury instructed that they cannot be punished, under such indictment, for the crime of rape, even though the jury might believe that they, or one of them, had committed a rape.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding.

W. F. BUNDY, and CHARLES WHAM, for plaintiff in error.

P. J. LUCEY, Attorney General, SAMUEL H. FINN, State's Attorney, and ARTHUR R. ROY, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ernest Harrison and Frank Sullens were indicted for kidnapping for ransom, were convicted and sentenced to twenty-five years' imprisonment in the penitentiary, and Harrison has sued out a writ of error.

Sullens was eighteen years old, Harrison twenty-six. Sullens, upon being arrested, made a confession to the officers, and afterwards, while in jail, made statements at different times which were introduced in evidence and his guilt is not now in question. He also testified at the preliminary examination but not on the trial. The victim of the crime was a school girl just two months under sixteen

years old, who lived with her father in the city of Salem. About nine o'clock in the evening of March 13, 1913, as she was returning from a picture show which she had attended with a girl friend, she was accosted a short distance from her home by Frank Sullens, whom she knew by sight as the son of the night marshal of the town but had never spoken to. He called to her to wait, and she did so, supposing him to be a neighbor boy. When he came up he asked where her brother was, and, walking with her toward her home, told her that she and her brother must be careful as there were men on watch to catch them on her father's account, because her father had been prosecuting some of the "boot-leggers." As they approached the walk leading to the house Sullens seized her by the throat, threatening to kill her if she cried out, threw her down on the cement walk and bumped her head against it until she became unconscious. The next thing she remembered was being in a field with Sullens and struggling to get away from him, but he compelled her to walk up and down along a railroad track somewhere. She did not remember leaving the railroad track, but she again became conscious in a field near a slaughter-house and struggled to get away. She fainted again and knew nothing more until she regained consciousness in the loft of the slaughter-house barn the next morning. She was alone. She got down and went home. She was in a dazed condition. Physicians were called, who discovered bruises on her person, an injury to her head caused by a severe blow, her face, lips and neck swollen, the prints of a thumb and fingers on the sides of her neck, and conditions indicating that a rape had been committed upon her. She did not recover her normal mental condition for several days. Soon after her return to her father's house Sullens was arrested the same forenoon and stated that Harrison had hired him to do what he had done. His statement was taken down in writing and signed by him, saying that Harrison had given him five dollars the night

before the crime was committed to kidnap the girl, take her to the old coal mine and turn her over to Harrison to hold her for a ransom or reward. Upon his statement Harrison also was arrested between two and three o'clock in the afternoon of the same day.

It has been argued that the evidence is insufficient to establish the *corpus delicti* or to connect the plaintiff in error with the commission of the crime. Since error occurred on the trial for which the judgment must be reversed, we shall not discuss the evidence further than may be necessary to the consideration of the errors so appearing in the record.

Immediately upon Harrison's arrest he demanded to be confronted with Sullens and was taken to the jail, where, in the presence of the sheriff, two deputy sheriffs and several other witnesses, an interview took place between the two. A conversation took place in which Sullens made statements incriminating Harrison, and these statements, together with the whole conversation, were introduced in evidence against Harrison over his objection. In the course of this interview the paper which Sullens had signed was read aloud in Harrison's hearing, and was characterized by him, with much profanity, as a lie. One of the witnesses testified that before the paper was read Harrison asked Sullens, "What is all this stuff you have been telling on me?" and when Sullens declared it was true, answered, with an oath, that it was a lie, and when it was read he merely shrugged his shoulders. As to what occurred at the beginning of the interview he agrees with the other three witnesses who gave an account of it, but he disagrees with them in their statement that when the paper was read Harrison said it was a lie. Another of the witnesses testified that he did not think Harrison denied all the statements made by Sullens. His testimony as to what was said, however, indicated that Harrison did deny everything that Sullens said. The witness explained that Harrison said that Sullens was a liar, but the witness did not understand that

remark as applying to the statement at the time. He said the statement was read over to Sullens, he was asked if it was true and said it was, and then Harrison said to him that he was a liar. The witness said he understood that Harrison was addressing his remarks to Sullens and not particularly to the statements made. The witness was unable to state any particular thing which he thought was not denied, and we are unable to see any ground for saying that a statement has not been denied when the person to whom it is addressed tells the person making it, at its conclusion, that he is a liar. It is not necessary to deny the statement in the language in which it is made or in detail. A general denial of the whole statement is sufficient. The principle on which statements made in the presence of a person accused of crime are received in evidence against him is that his silence, when he might, and naturally would, deny statements imputing guilt to him if they were untrue, is regarded as an acquiescence in their truth and an implied admission of guilt. (*Ackerson* v. *People,* 124 Ill. 563; *Matthews* v. *State,* 55 Ala. 187; *State* v. *Walker,* 78 Mo. 380; *Richards* v. *State,* 82 Wis. 172; Wharton on Crim. Evidence,—8th ed.—sec. 679; Underhill on Crim. Evidence, sec. 122.) Unless the words or conduct of the accused, under the circumstances, is such that it is a natural and reasonable inference that he admitted the truth of the charge, such statements are inadmissible. (*O'Hearn* v. *State,* 79 Neb. 513; *Merriweather* v. *Commonwealth,* 118 Ky. 870.) If a defendant is charged with a crime and unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence against him as an admission. (*Fitzgerald* v. *Williams,* 148 Mass. 462; *Ware* v. *State,* 96 Ga. 353.) If he makes a reply admitting the truth of the statement, wholly or in part, both the statement and reply are competent evidence. *Commonwealth* v. *Kenney,* 12 Metc. 235; *Commonwealth* v. *Trefethen,* 157 Mass. 180.

In his written statement Sullens said that on Wednesday night, March 12, about seven o'clock in the evening, Harrison gave him five dollars in the rear of the Dr. Green building, across the street from the city hall, and that for that consideration he agreed to kidnap the girl and turn her over to Harrison, who was to hold her for ransom or reward, and that before entering into the contract Harrison gave him several drinks of whisky. One witness testified that when the statement was read to Harrison the witness asked him if it was true that he was at that place at that time, back of the restaurant, and Harrison said it was not true; that he wasn't ever back there but that he had met Sullens on the east side of the street, near the Sullens barber shop, and stepped off the walk there back into a shed and gave him a drink one night that week but he didn't remember what night, but that being back of the restaurant was absolutely false. Another witness testified that Harrison first denied seeing Sullens at all that day, but finally said that he did see him in the afternoon, across the street, and had given him a drink of whisky across the street, between the barber shop and Hull's store on the east side of Broadway, and that Harrison said there were no witnesses who could prove that they saw him in the presence of Sullens near the Green building on the night of March 12 or near the Eagan restaurant. A third witness testified that Harrison positively denied having been on the west side of Main street, around the Green building, in company with Sullens that night, but said that he had been with him on the east side of Broadway, between the Hull building where Hull has his little store and the barber shop, and they drank together there. There was nothing in these statements that had any tendency to show Harrison's guilt. They were entirely immaterial on that question. They explicitly denied Sullens' statement. Whether at another time and place than that mentioned by Sullens, Harrison and Sullens had drank together had no tendency to throw any

light upon the question whether Harrison had induced Sullens to commit this crime. Harrison's statement had no tendency to show that Sullens' statement, or any part of it, was true. No part of the conversation at the jail when Sullens' statement was read was admissible in evidence against Harrison, and his objections to it should have been sustained.

The court permitted two physicians and other witnesses, over the objection of plaintiff in error, to describe the physical condition of the girl after her return home the morning after the kidnapping, her disheveled hair, her bloody, soiled and disordered clothing, her swollen face and neck, her bruised body, and conditions indicating the commission of a rape upon her. The proof of the acts done by one of the defendants in the course of the kidnapping was proper though it incidentally involved proof of a rape. But the defendants were not charged with rape, and the independent proof of that crime was incompetent. The conditions testified to had no tendency to throw any light on the kidnapping alleged to have occurred the night before. Evidence of the commission of another crime than that with which the defendant is charged is not competent unless it tends to prove guilt of the crime charged or is a part of the transaction. (*Farris* v. *People,* 129 Ill. 521; *People* v. *Jennings,* 252 id. 534; *People* v. *Gibson,* 255 id. 302.) It is suggested that the evidence is admissible to show that the girl had not gone willingly but was taken by force. There was no question of this kind in the case. There was no evidence or claim that she had gone willingly. The testimony as to her general appearance and condition upon her return was admissible, but not the evidence of the physicians' examination and the circumstances tending to prove the rape.

Exception was taken to the following instruction:

"The court instructs the jury that although the defendant Harrison in this case had a right to be sworn and

to give testimony in his own behalf, yet the jury are not bound to believe his testimony, but his credibility and the weight to be given to his testimony are matters exclusively for the jury, and in determining the weight you will give his testimony you may take into consideration his interest in the result of the case, and you may also take into consideration the fact, if such be the fact, that he has been contradicted by other credible witnesses or by facts and circumstances shown on the trial."

The tests by which the credibility of a defendant in a criminal case who becomes a witness in his own behalf is to be determined are the same as are legally applied to any other witness. The defendant's relation to the case is different from that of any other witness, and if any instruction in regard to the method of determining his credibility is to be given, he must necessarily be particularly singled out and the attention of the jury called specially to him. It is proper to tell the jury that a particular test of credibility may be applied to the defendant's testimony, as the fact (if such is the fact) that he has been contradicted by other witnesses, or that if he has willfully testified falsely to a material fact his testimony may be entirely rejected unless corroborated. Such an instruction, coupled with the requirement stated in the instruction that the same tests apply to all other witnesses as to the defendant, has been approved in many cases, among which are *Hirschman* v. *People,* 101 Ill. 568, *Rider* v. *People,* 110 id. 11, *Siebert* v. *People,* 143 id. 571, *Williams* v. *People,* 196 id. 173, *McCracken* v. *People,* 209 id. 215, *Crocker* v. *People,* 213 id. 287, *Maguire* v. *People,* 219 id. 16, and *Spears* v. *People,* 220 id. 72. An instruction which singles out the defendant, alone, from all the other witnesses and calls the jury's attention to his interest, or to some other circumstance which may affect his credibility, ought not to be given without also telling the jury that the same test applies to all the witnesses in the case as well as to the defendant.

In an instruction given at the defendant's request the court told the jury that the defendant was a competent witness, and that he differed from other witnesses only in the fact that he was the defendant charged and being tried, which might be taken into consideration in passing on his credibility, but in every other respect his testimony must be treated the same as that of every other witness who had testified in the case and was subject to like tests for the purpose of determining the reliance to be placed on it, and that the jury had no right to refuse to consider or to disregard his testimony through mere caprice or merely because he was the defendant. These two instructions were an accurate statement of the law, and it was not injurious to the defendant that they were given as two instructions and not included in one.

The following instruction was given and excepted to:

"If you believe from the evidence, beyond a reasonable doubt, that the defendant Sullens made any confession freely and voluntarily of the crime charged in the indictment, it is the duty of the jury to consider said confession together with all the other testimony, and if the jury believe the whole confession to be true they may act upon the whole as true, and the jury are at liberty to judge of it, like all other evidence, by all the circumstances of the case."

Sullens at different times made several confessions, which were given in evidence against him. This instruction, however, was not limited to Sullens, but informed the jury that if they believed the whole confession to be true they might act upon it as true. The confessions were not evidence against Harrison, but the jury were told they might act upon the whole confession as true,—that which affected Harrison as well as that which affected Sullens. This instruction was erroneous, and the fact that other instructions limited the jury in their consideration of Sullens' statements as affecting Harrison to those made in Harrison's presence did not correct the error. One instruction

permitted them to consider all the confessions as evidence against Harrison, the other limited their consideration to confessions made in Harrison's presence, and we cannot know which they followed.

The objections made to the giving and refusing of instructions in regard to the consideration to be given to Harrison's conduct at the time of Sullens' confessions, and the effect of those confessions as against Harrison, are disposed of by the discussion of the competency of Sullens' statements against Harrison. The exclusion of these confessions would leave no basis for such instructions.

Instructions Nos. 16, 17, 18, 20 and 22 given at the request of the People all told the jury that if they believed from the evidence, beyond a reasonable doubt, that Sullens committed the crime and that Harrison advised and encouraged him to do so, then Harrison would be considered a principal and both defendants should be found guilty. They announced, in varying language, a single rule of law, and one, only, should have been given. The repetition of the same instruction so many times would unduly impress the single principle announced upon the jurors' minds, to the exclusion, perhaps, of others equally important.

The fourth and seventh instructions were duplicates, and only one should have been given.

Instruction No. 7 asked by the plaintiff in error was refused. It told the jury that although they might believe that Sullens seized the girl with the intention of holding her for ransom but that he afterward held her solely for the purpose of committing a rape on her, yet they could not find him guilty. The statute denounces the crime of kidnapping with intent to secretly confine in this State any person against his will for the purpose of extorting ransom or money or other valuable thing. The crime is complete when the person is seized and carried off with the intent and for the purpose mentioned in the statute. A subsequent change of purpose on the part of the criminal does

not relieve him from responsibility for the crime already committed.

Refused instruction .No. 8 informed the jury that the crime charged in the indictment must be established to the satisfaction of the jury, beyond all reasonable doubt, by evidence in the case, independent of the admissions or confessions of Sullens. This required the jury to entirely disregard the confessions of Sullens and was wrong. The true rule was stated in defendants' instruction No. 22, which informed the jury that the *corpus delicti* could not be proved by confessions, alone, but that there must also be evidence, independent of the confessions, which tends to establish the crime of kidnapping for ransom. The plaintiff in error objects to the modification of this instruction, which, as asked, stated that before they could convict, the jury must believe from the evidence in the case, independent of the confessions of Sullens, that the crime of kidnapping for ransom had been committed. Complete proof of the *corpus delicti*, independent of the confession of the accused, is not required. If there is evidence, independent of the confession, tending to prove the crime and showing *prima facie* that the crime charged has been committed, then evidence connecting the defendant with the crime, including his confession, if any, is admissible. (Underhill on Crim. Evidence,—2d ed.—sec. 147; 1 Elliott on Evidence, sec. 292; *Bergen* v. *People,* 17 Ill. 426; *People* v. *Hannibal,* 259 id. 512; *United States* v. *Williams,* 1 Cliff. 53; *People* v. *Badgley,* 16 Wend. 53; *Winslow* v. *State,* 76 Ala. 42; *State* v. *Jacobs,* 21 R. I. 259; *State* v. *Knapp,* 70 Ohio St. 380; *Gantling* v. *State,* 41 Fla. 587; *People* v. *Jones,* 123 Cal. 65; *Commonwealth* v. *Tarr,* 4 Allen, 315; *Commonwealth* v. *McCann,* 97 Mass. 580; *Commonwealth* v. *Killion,* 194 id. 153; *St. Clair* v. *United States,* 154 U. S. 134.) The objection to the modification of the plaintiff in error's instruction No. 25 is of the same character and cannot be sustained.

Refused instruction No. 9 was properly refused. It was not necessary to prove, in addition to the kidnapping and the purpose to hold for ransom, some act done toward obtaining the ransom or circumstances tending to prove such act done. The kidnapping and the purpose to hold for ransom constitute the offense, and the jury were properly so instructed in defendants' instruction No. 24 as modified.

The plaintiff in error asked an instruction, No. 20, that although they might believe, from the evidence, that the defendants were guilty of committing a rape, or one of them was so guilty, the jury could not try them, or either of them, in this case on that charge, nor were they allowed to punish either of them in this case for the reason that the jury believed a rape had been committed. The court modified the instruction by inserting the word "alone" after the word "reason" and gave it as modified. The modification was erroneous. The defendants were on trial for kidnapping for ransom and were entitled to the instruction that they could not be punished in that prosecution for rape. By the modification the jury would understand that if the defendants were found guilty of kidnapping for ransom they might also be punished for rape.

The plaintiff in error moved to exclude from participation in the trial attorneys who had been employed by the board of supervisors and private persons to assist the State's attorney. The plaintiff in error was represented by able and experienced counsel, and no evidence of oppression of the plaintiff in error or unfairness or inequality in the trial appears in the record. The court did not err in denying this motion.

The judgment is reversed and the cause is remanded for a new trial.    *Reversed and remanded.*