## PEOPLE v. CANEPI.

(Supreme Court, Appellate Division, Second Department. April 15, 1904.)

1. CRIMINAL LAW—PRINCIPAL.

Under the express provision of Pen. Code, § 29, one who aids and abets in the commission of a crime is liable as a principal.

2. SAME—POOL SELLING—EVIDENCE.

In prosecution for violation of Pen. Code, § 351, prohibiting pool selling, evidence *held* sufficient, within the rule which requires the establishment of criminality beyond a reasonable doubt, to sustain the finding that the defendant assisted pool selling, so that he became liable as principal.

3. SAME—TRIAL—STATEMENT OF PENALTY BY COURT.

On a criminal trial, the statement by the court, in the presence of the jury, of the penalty prescribed by statute for the crime charged, is not error.

Appeal from Westchester County Court.

Joseph Canepi, Jr., was convicted of pool selling in violation of Pen. Code, § 351, and appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

David H. Hunt, for appellant.

J. Addison Young, Dist. Atty., for the People.

WILLARD BARTLETT, J. There is no evidence in this case that the defendant actually engaged in pool selling himself; but I think the proof is sufficient, within the rule which requires the establishment of criminality beyond a reasonable doubt, to sustain the finding that the defendant, on the day charged in the indictment (July 26, 1902), assisted and abetted pool selling in violation of section 351 of the Penal Code, and hence that he became liable as a principal. See Pen. Code, § 29.

The defendant went to the jury without offering any evidence whatever. The proof in behalf of the prosecution showed that on July 26, 1902, in a room upstairs in a building at Yonkers occupied by the defendant as a liquor saloon, pool selling on the horse races at Brighton Beach was going on; that cards were brought from behind a partition in this room and hung on the wall by a man named Cunningham, which cards bore the names of the horses entered for each race, and were consulted by the persons in the room before they made their bets; that for a period of five minutes the defendant was present in the room, talking with Cunningham, while the latter was engaged in hanging up these cards; and that the defendant exercised control over access to this room, having on Friday, July 25, 1902, refused to allow a police officer to enter it, but saying that the officer could do so on the following Monday, adding: "I am through. Mrs. Engle is going to take the room. I am going to hire the rooms to Mrs. Engle." This was after the policeman had told Canepi that he heard he was running a poolroom, and Canepi had told him that nothing of the sort was going on. The evidence introduced by the people further showed that a telephone found in the poolroom had been placed there upon the application of the defendant. The telephone contracts, which the defendant signed, contained the following words, under the heading, "Matters for Subscribers' List": "Canepi, Joseph, Jr. St. James. 12 Palisade Avenue." The witness who testified to Canepi's presence with Cunningham in the poolroom received from the hand of an unseen person, behind a partition therein, a ticket as a voucher for the money which he bet on one of the races, and upon the face of this ticket were printed the words "St. James Club." Without a further review of the testimony, I think it sufficient to say, so far as the facts are concerned, that this record clearly establishes the defendant's complicity in the conduct of pool selling upon the premises under his control.

Some questions of law are raised which it is necessary to notice. The learned counsel for the defendant likens this case to that of People v. Shannon, 87 App. Div. 32, 83 N. Y. Supp. 1061, where we reversed a judgment of conviction upon the same indictment. The

defect in that case, however, was the failure to prove Shannon's presence on any day when pools were sold, although there was evidence that pools were sold on days when the testimony did not show that he was present. The effort there was to establish Shannon's active participation in the selling of pools, and we held that the trial court erred in refusing to charge the jury that they must not find him guilty unless they found that he was engaged in pool selling on July 26, 1902. Here Canepi was proved to have been present in the pool-room on that date—one important step in the selling of pools being taken in his presence by the person with whom he was conversing at the time—while the other evidence to which reference has been made shows that he was the protector, if not the principal promoter, of the pool-selling business.

Just before the jury retired, the following colloquy occurred between counsel and the court:

"Mr. Young: When your honor read the statute in full, you stated the penalty. I ask your honor to charge the jury that under the statute the crime is punishable by fine or imprisonment. Mr. Hunt: Objected to. The Court: I have read the statute. I read the statute that the defendant might be imprisoned in State's Prison for not exceeding two years, and that he might be fined for an amount not exceeding two thousand dollars. That means from imprisonment of from one to two years—not from one day up—or it means a fine of from one cent up to two thousand dollars. It cannot be both. (Exception to defendant.) Mr. Hunt: I ask your honor to charge that your statement—having charged on this subject the fine may be from one cent—is no intimation to the jury that your honor will fine one cent. The Court: No; I don't give any intimation to the jury what I will do."

It is not suggested that the final statement of the learned county judge as to the penalty prescribed by law was incorrect, but it is argued that it was error to give the jury any instruction whatever as to the punishment; the idea apparently being that they may have been influenced to convict by the impression that the district attorney would ask for only a light sentence. This view strikes me as rather fanciful. I can hardly see how this jury can have been misguided by being told simply what were the possible consequences of a conviction at their hands. The case is not at all like People v. Chartoff, 72 App. Div. 555, 75 N. Y. Supp. 1088, where the objection to the instruction on the subject of punishment was that it permitted the jury to assume that different and less stringent rules applied to the conduct of a trial for a misdemeanor than to the conduct of trials for offenses which the law punishes more severely. There was no comparison of the sort here, and I cannot assent to the doctrine that it is legal error to tell a jury what the Legislature has put into the statute book in reference to the punishment of the very crime of which they are called upon to take cognizance.

I find no errors in this record affecting the substantial rights of the defendant, and therefore conclude that the judgment should be affirmed. All concur.