The People v. Ross, 242 Ill. App. 221.

# The People of the State of Illinois, Defendant in Error, v. Ernest J. Ross, Plaintiff in Error.

## Gen. No. 30,852.

1. CRIMINAL PROCEDURE—*sufficiency of evidence, in prosecution for misdemeanor, to show defendant not "usually and publicly" resident of State after date of offense.* Evidence in a prosecution for assault with a deadly weapon with intent to inflict bodily injury, under an indictment returned more than three years after the alleged offense, held sufficient to support an allegation thereof that the defendant was not "usually and publicly a resident within the State of Illinois" after the date of the alleged offense.

2. CRIMINAL PROCEDURE—*propriety of instruction stating statute penalty authorized to be imposed by court in event of conviction.* In view of Cahill's St. ch. 38, ¶ 764, providing that in all criminal cases the jury are the judges of the law and the fact, it is not reversible error for the court, in a prosecution for assault with a deadly weapon with intent to inflict bodily injury, to charge the jury substantially in the language of Cahill's St. ch. 38, ¶ 37, which denounced the offense in question, although such statute stated the penalty which could be imposed by the court in the event of defendant's conviction.

3. CRIMINAL PROCEDURE—*when testimony as to statement by victim of assault identifying defendant as assailant properly admitted.* In a prosecution for assault with a deadly weapon with intent to inflict bodily injury it was not error to permit witnesses to testify as to a statement made by the victim of the assault, while he was on the operating table at a hospital within half an hour after the alleged offense, to the effect that defendant was the man who had shot him.

4. ASSAULT AND BATTERY—*sufficiency of evidence to support finding that defendant was the guilty person.* Evidence in a prosecution for assault with a deadly weapon with intent to inflict bodily injury held to justify a finding that, beyond a reasonable doubt, defendant was the man who committed the offense charged.

Error by defendant to the Criminal Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Affirmed. Opinion filed October 13, 1926.

EVERETT JENNINGS and JOHN F. TYRRELL, for plaintiff in error.

ROBERT E. CROWE, State's Attorney, for defendant in error; EDWARD E. WILSON and CLARENCE E. NELSON, Assistant State's Attorneys, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

On July 14, 1925, a jury in the criminal court of Cook county returned a verdict finding the defendant guilty of assault with a deadly weapon as charged in the second count of the indictment, and that the assault was committed with an intent to inflict upon the person of another a bodily injury. After overruling the motion for a new trial the court sentenced the defendant to confinement in the house of correction for six months and a fine of $100 and costs amounting to $317.90 was imposed.

On January 31, 1923, the Grand Jury returned an indictment against the defendant which contained two counts. The first charged that the defendant on August 22, 1919, committed an assault with intent to murder one Frank E. Rhode, and the second count charged that the defendant committed an assault with intent to inflict bodily injury upon Rhode. Each count alleged that the defendant since the 22nd of August, 1919, "was not usually and publicly a resident within the State of Illinois."

The People offered evidence to the effect that about one o'clock in the morning of August 22, 1919, Frank E. Rhode, who was a motor cycle policeman for the city, was on duty near the northwest corner of Kedzie Avenue and Lake Street, Chicago, Lake Street runs east and west and Kedzie Avenue north and south. There is a double line of street car tracks in Lake Street, and while Rhode was standing near the northwest corner of the street intersection, he saw two auto-

The People v. Ross, 242 Ill. App. 221.

mobiles, one behind the other going east in Lake Street in the eastbound track. One automobile was towing the other. After they had passed, Rhode saw that the rear automobile did not have any lights and that they did not stop at the boulevard. Rhode thereupon mounted his motor cycle and drove east after the two automobiles and called to the driver who was in the front automobile to stop. There were two men in the driver's seat. The two automobiles came to a stop and officer Rhode dismounted from his motor cycle and he was adjusting it on its stand when one of the men from the automobile shot Rhode three times with a pistol. Rhode was struck once in the left shoulder and twice in the calf of the leg. The assailant then turned around and ran in front of the automobiles and turned west in Lake Street pursued by officer Rhode. Other police officers came to his assistance. Two men ran from the automobiles, one toward the northwest of the street intersection and jumped over a fence into a vacant lot. When Officer Rhode had pursued this man to the fence he apparently became weak from wounds and was taken by another officer to a hospital. Other officers went through the hole in the fence and searched through the grass and weeds that were growing in the lot and found the defendant lying on his face with a German Lueger gun in his hand, or by his side. They placed him under arrest. About a half an hour after the shooting, the officers that arrested the defendant learned that Rhode had been taken to a nearby hospital, and they took the defendant to the hospital for the purpose of having Rhode identify him. When they entered the hospital Rhode was on the operating table and the surgeon was just about to perform an operation. When the defendant was brought in Rhode raised up from the operating table, looked at the defendant and said: "That is the son of a bitch that shot me." The defendant said nothing and was immediately thereafter taken to the police station.

The People also offered evidence that the defendant was not publicly a resident of the State since the 22nd of August, 1919. The only evidence offered on behalf of the defendant was that given by Otto Marosek, who testified that he was a gun mechanic employed by Von Lengerke & Antoine, who were engaged in the selling of sporting goods in Chicago which included guns and ammunition; that he had been a mechanic for about 15 years and was familiar with the various foreign makes of guns and revolvers; that he was familiar with the German type of gun called Lueger; that it carried eight bullets or shots, and that when a shot is fired the shell is ejected automatically; that it was not possible to put eleven bullets or shots in such a gun; that eight was all it would hold. This evidence was offered to dispute that offered on behalf of the People to the effect that the defendant had fired three shots, and the police officers testified that they examined the gun when they captured the defendant in the vacant lot and that the gun then contained eight bullets. A reading of the testimony in the record given by the witness Marosek does not convince one that he was an expert gun mechanic, or that he was familiar with the various foreign makes of guns and revolvers as he testified when he was being qualified.

The defendant contends that the State wholly failed to prove the allegation of the indictment, that the defendant was not usually and publicly a resident of the State, and that since the defendant was found guilty of a misdemeanor, which was barred in 18 months under the statute, and since he was not indicted for more than three years after the act was committed, the judgment must be reversed. While the testimony given by the several witnesses on this question, called on behalf of the State, and that is the only evidence in the record, is not specific at all times, yet we think it is sufficient to sustain the allegation of the indictment. Five officers on behalf of the People testified on this

point. Three officers testified that they had been assigned to the Warren Avenue and Des Plaines Street stations and had been performing their duties at these stations as police officers and had not seen the defendant from September, 1919, to March, 1923. Officer Freemuth testified that between 1918 and 1919 he saw the defendant two or three times a week in the neighborhood of Madison, Paulina and Wood Streets (which is on the west side of the city and where the Warren Avenue and Des Plaines Street stations are located) but that he had not seen the defendant since September, 1919, until March or April, 1923.

Defendant further contends that the court erred in instructing the jury concerning the penalty in the event of conviction under the second count of the indictment since the jury had nothing to do with the fixing of the punishment, and in support of this contention the case of *People v. Johns*, 190 Ill. App. 367, is cited. There is but an abstract of the opinion in the printed report of that case, but since the filing of the briefs we have been furnished with a copy of the opinion by the State's attorney of Cook county. A reading of the opinion discloses the fact that the judgment in that case was reversed for a number of reasons. And all that is said in the opinion on the point in question is: "The court in instructing the jury told them what the penalty was for the offense charged. That was a matter with which the jury had nothing to do." Whether the instruction in that case merely told the jury what the penalty was without quoting the statute defining the offense we are unable to say. But in the instant case the instruction complained of is substantially a copy of paragraph 37, ch. 38, Cahill's Statutes, which defines assault with a deadly weapon and provides a penalty for such offense. That paragraph is as follows: "An assault with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable

provocation appears, or where circumstances of the assault show an abandoned and malignant heart, shall subject the offender to a fine not exceeding $1,000 nor less than $25, or imprisonment in the county jail for a period not exceeding one year, or both, in the discretion of the court.'' We think the giving of this instruction was entirely proper. Whatever may be the law in other States, in this State the statute expressly provides (section 11, div. 13, ch. 38, ¶ 764, Callaghan's Illinois Statute) that the jury in all criminal cases are the judges of the law and of the fact. And in construing this section, the Supreme Court held in *Wohlford v. People,* 148 Ill. 296, that the principles of law involved in a criminal case might be discussed in argument to the jury, and that the law as laid down in cases reported by courts of last resort, as well as that of standard authors, might be read to the jury. Under this statute and the authorities cited, it is obvious that counsel for the People, as well as counsel for the defendant, are authorized to read to the jury these statutes covering the offense with which defendant is charged, and obviously the court is authorized to tell the jury in an instruction what the statute is. The Appellate Division of the Supreme Court of New York held that it was not error for the court to instruct the jury as to the penalty prescribed by the law, where in doing so he called attention to the law as passed by the legislature. *People v. Canepi,* 93 App. Div. 379, 87 N. Y. S. 773. In that case the defendant was being prosecuted for the violation of a statute of New York which prohibited pool selling. The court stated in the presence of the jury the penalty prescribed by the statute, and in discussing the case, Judge Bartlett, who wrote the opinion of the court, said (p. 775):

''It is not suggested that the final statement of the learned county judge as to the penalty prescribed by law was incorrect, but it is argued that it was error to give the jury any instruction whatever as to the

punishment; the idea apparently being that they may have been influenced to convict by the impression that the district attorney would ask for only a light sentence. This view strikes me as rather fanciful. I can hardly see how this jury can have been misguided by being told simply what were the possible consequences of a conviction at their hands.    *    *    *    And I cannot assent to the doctrine that it is legal error to tell a jury what the Legislature has put into the statute book in reference to the punishment of the very crime of which they are called upon to take cognizance.''

The defendant further contends that the court erred in permitting witnesses to testify, over objection, to the statement made by Rhode that the defendant was the man who shot him, while Rhode was on the operating table at the hospital, and in support of this it is said that the defendant was not called upon to deny the statement made by Rhode, there being a number of police officers present at the time together with doctors and nurses, and that the defendant was not given ample time as he was hurried out of the room as soon as Rhode had made the charge. The testimony of identification in this case was important, since we gather from counsel's brief, at least by inference, that he contends the defendant was not the man who did the shooting, but that the police had arrested the wrong man. The evidence showed that about 30 minutes after the shooting occurred and while Rhode was on the operating table at the hospital, the defendant was brought into the operating room for the purpose of identification; that immediately upon seeing him, Rhode stated that the defendant was the one who had shot him. The defendant made no reply as a person would ordinarily be inclined to do if not guilty of the charge made. We think the evidence was competent. *People v. Harrison,* 261 Ill. 517; *People v. Nitti,* 312 Ill. 73.

It is finally argued by defendant's counsel that the evidence is not sufficient to support the verdict and the judgment, for the reason that the evidence does not show that the defendant was the person who shot Rhode. We have carefully considered all the evidence in the record on this subject and are of the opinion that it justifies the finding that the defendant was the guilty person beyond a reasonable doubt. The witnesses described the size of Rhode's assailant and the way he was dressed; that immediately after the shooting he ran around the automobile, across the street, through a hole in the fence and into a vacant lot. Two officers followed the defendant into the lot and a few minutes afterwards found him lying upon his face on the ground endeavoring to hide in the weeds and bushes there growing, and that he had a gun in his hand. Thirty minutes later he was positively identified by Officer Rhode while he was on the operating table at the hospital. This is all the evidence in the record and there is none to the contrary.

The judgment of the criminal court of Cook county is affirmed.

*Affirmed.*

TAYLOR, P. J., and THOMSON, J., concur.